OPINION
{¶ 1} Defendant-appellant Joseph Parsons appeals from his sentence and conviction for rape by threat of force and gross sexual imposition. On March 4, 2003, Parsons was indicted for two counts of raping a child under the age of thirteen. Parsons filed a Motion to Suppress on March 24, 2003, which was subsequently overruled by the overruled by the trial court on September 9, 2003.
 {¶ 2} Following a jury trial on January 20 and 21, 2004, Parsons was found guilty of one count of rape by threat or force and one count of gross sexual imposition. On March 19, 2004, Parsons was classified as a sexual predator and sentenced to a mandatory life term for the rape count. The trial court imposed a five-year sentence for the count of gross sexual imposition to run consecutively to the mandatory life term.
 {¶ 3} In the instant appeal, Parsons submits three assignments of error for review by this Court. Initially, Parsons contends that the State, in contravention of Batson v. Kentucky (1986), 476 U.S. 79,106 S.Ct. 1712, failed to provide any race-neutral basis when it eliminated the single remaining African-American juror from the panel. After a thorough review of the record, we conclude that based on responses provided by the prospective African-American juror to questions during voir dire, a race-neutral basis existed for the State to peremptorily challenge said juror.
 {¶ 4} Next, Parsons contends that the trial court erred in allowing the State to amend the indictment in order to expand the time frame during which the charged offenses allegedly occurred. In light of the nature of the amendment to the indictment, we conclude that the identity of the crimes charged were not altered so as to cause any prejudice to the presentation of Parsons' defense.
 {¶ 5} Lastly, Parsons argues that his conviction for rape is against the manifest weight of the evidence because the State failed to provide sufficient evidence of penetration, digital or otherwise. With respect to this third and final assignment, we conclude that ample evidence was adduced at trial that, if believed by the jury, sufficiently demonstrated the penetration element necessary to support a conviction for rape.
 {¶ 6} Accordingly, the judgment of the trial court is affirmed.
 I {¶ 7} The two incidents that form the basis of Parsons' convictions allegedly occurred during the summer of 2002, when the victim, S.B., was nine years old. The alleged victim is Parsons' niece.
 {¶ 8} The record reveals that one incident occurred when S.B., her brother, and another cousin had been sent to stay overnight at Parsons' residence on Hoover Avenue in Dayton, Ohio. At some point during that evening, S.B. was watching television in Parsons' bedroom when he entered the room and closed the door. S.B. testified that Parsons got on top of her. She stated that he removed his "private"[1] from his pants and placed an "orange thing" on it which he had removed from under the mattress. S.B. testified that, despite her cries for help, Parsons then "put his private down my (her) private."
 {¶ 9} S.B. testified to a second occurrence during the summer of 2002 when she and her brother were residing at the home of their Aunt Darlene on Hancock Street in Montgomery County, Ohio. S.B. testified that she and her brother had gone to bed one evening in bunk beds provided for them by her aunt. S.B. slept in the bottom bunk, and her brother slept in the top bunk. After the two children were in bed, Parsons appeared at the window to the room and knocked on the window, beckoning for someone to allow him someone to allow him entrance into the house. S.B.'s brother opened the window, and Parsons entered the room. Next, S.B. testified that Parsons got on top of her while she was in the bottom bunk and would not allow her to leave the room. S.B. stated that, while in bed with her, Parsons touched her both with his "private" as well as his hands on the inside and outside of her "private." S.B. testified as to experiencing pain between her legs following both instances of alleged rape.
 {¶ 10} During an interview conducted by a detective with the Dayton Police Department on February 24, 2003, Parsons discussed the charges which had been lodged against him. Parsons did not deny that he had sexual contact with S.B. on both occasions during the summer of 2002. Although Parsons confessed to the detective that he did inappropriately touch S.B. in her genital area, he stated that at no point during either incident did he penetrate S.B.'s vagina with his penis or his hands. Moreover, Parsons stated that it was S.B. who had initiated the events which had transpired by making sexual advances towards him.
 {¶ 11} From his conviction and sentence, Parsons appeals.
 II {¶ 12} Parsons' first Assignment of Error is as follows:
 {¶ 13} "The prosecution, with the absence of any race neutral reasons, eliminated all the african americans from the jury in violation of Batson v. Kentucky (1986), 476 U.S. 79."
 {¶ 14} In his first assignment of error, Parsons contends that the State's elimination of an African-American juror from the venire without providing any race-neutral reasons violated the United States Supreme Court's mandate set forth in Batson, supra. Batson, supra. The State, however, asserts that in light of certain responses provided by the juror during voir dire, it possessed an adequate race-neutral basis on which to disqualify him.
 {¶ 15} In response to questions posed by the State with respect to a juror's ability to determine a verdict without factoring in the sentence to be imposed, the juror stated repeatedly that he did not know if he would be able to consider one without considering the other. When asked if he could separate verdict considerations from sentencing considerations if the judge advised him that it was something that he had to do the juror stated:
 {¶ 16} "A: I can understand what he says. If he advises me that has nothing do (sic) with it, to be totally honest, I don't think anybody canseparate. I know what my job is. I'm going to do my job."
 {¶ 17} When asked if anyone on the panel had a bad experience with the police, the same juror answered in the affirmative stating that he had unresolved issues with respect to police harassing him and his family. The State then asked the juror if he could set aside his feelings when weighing the testimony of a police officer, were one to testify during the trial. The juror stated:
 {¶ 18} "A: Probably not because it done happened to many times to me.
 {¶ 19} "Q: Do you think it would prevent you from being fair and impartial in this case?
 {¶ 20} "A: I don't know."
 {¶ 21} In light of the above responses provided to the State's inquiries, the prosecutor used one of her peremptory challenges to excuse the single remaining African-African-American juror from the panel, and the trial court dismissed him.
 {¶ 22} In Batson supra, the United States Supreme Court held that the Equal Protection Clause of the United States Constitution precludes purposeful discrimination by the state in the exercise of its peremptory challenges as to exclude members of minority groups from service on petit juries. Id. at 89, see, also, State v. Hernandez (1992), 63 Ohio St.3d 577,581, 589 N.E.2d 1310. Batson has since been extended to: criminal defendants who are not of the same race as the excluded jurors, Powersv. Ohio (1991), 499 U.S. 400, 111 S.Ct. 1364; civil cases, Edmonson v.Leesville Concrete Co., Inc. (1991), 500 U.S. 614, 111 S.Ct. 2077; defense peremptory challenges, Georgia v. McCollum (1992), 505 U.S. 42,112 S.Ct. 2348; and gender based peremptory challenges, J.E.B. v. Alabamaex rel. T.B. (1994), 511 U.S. 127, 114 S.Ct. 1419. The burden of proof is on the defendant to demonstrate that the state has used a peremptory challenge in a discriminatory manner. Batson, supra, 476 U.S. at 96.
 {¶ 23} Batson created a three-step burden shifting procedure designed to determine if a peremptory challenge is racially motivated. Id. At 96-98. First, the defendant, as the opponent of the strike, must establish a prima facie showing that the state purposefully discriminated in exercising a peremptory challenge to remove a prospective juror. In order to do this, a defendant must demonstrate: (1) that members of a cognizable racial group were peremptorily challenged, Castaneda v.Partida (1977), 430 U.S. 482, 494, 97 S.Ct. 1272, 1280; and (2) that the facts and any other relevant circumstances raise an inference that the state used its peremptory challenges to exclude jurors on account of their race. State v. Hill (1995), 73 Ohio St.3d 433, 444-445,653 N.E.2d 271. In this instance, the 445, 653 N.E.2d 271. In this instance, the defendant is entitled to rely on the fact that peremptory challenges constitute a jury selection practice that permits "those to discriminate who are of a mind to discriminate." Avery v. Georgia
(1953), 345 U.S. 559, 562, 73 S.Ct. 891.
 {¶ 24} Once the defendant makes a prima facie showing of discrimination, the state must then articulate a race-neutral explanation for the peremptory challenge "related to the particular case to be tried." State v. Brown (May 23, 2003), Montgomery App. No. 19236, citingBatson, supra, at 98. Unless a discriminatory intent is inherent in the prosecutor's explanation, the reason offered will be found race-neutral.Hernandez v. New York (1991), 500 U.S. 352, 360, 111 S.Ct. 1859. As this Court previously noted in Brown, supra, "because this stage of the analysis rests largely on the trial court's evaluation of the prosecutor's credibility, an appellate court is required to give the trial court's findings great deference." Hicks v. Westinghouse Materials Co.
(1997), 78 Ohio St.3d 95, 102, 676 N.E.2d 872.
 {¶ 25} After a sidebar conference where both the State and defense counsel presented their arguments with respect to the African-American juror's removal from the panel, the trial court stated as follows:
 {¶ 26} "The court finds that the prosecutor has provided to the court racially neutral explanations for exercising this peremptory challenge against Mr. Carlton. My notes indicate that he did state early in his examination he was not sure that he could eliminate the potential penalty from his consideration as to the guilt or innocence that would weigh on his mind which would be contrary to the instruction of the court. And he did state that he had recurring negative experiences with the police. He said he still thinks about it a lot, that He said he still thinks about it a lot, that it happened too many times. * * * * * well, this is a racially neutral reason so there are two independent racially neutral explanations for exercising this preempt. So, therefore, court finds that this is not a case of purposeful discrimination by the prosecutor in exercising its discretion."
 {¶ 27} On balance, we conclude that the responses given by the juror to the questions advanced by the State provided adequate race-neutral grounds for the State to exercise its peremptory challenge. The trial court properly concluded that the State articulated and possessed race-neutral reasons for exercising a peremptory challenge as required under Batson, supra.
 {¶ 28} Parsons' first assignment of error is overruled.
 III {¶ 29} Parsons' second Assignment of Error is as follows:
 {¶ 30} "The court erred in allowing the prosecution to amend the indictment to fit the testimony after the states' case in chief was concluded."
 {¶ 31} In his second assignment of error, Parsons contends that the trial court erred when it permitted the State to amend the indictment with respect to expanding the time in which the alleged incidents occurred. Parsons argues that in allowing the State to amend the indictment, the trial court violated his due process rights.
 {¶ 32} At the close of the State's case in chief, the trial court stated that testimony elicited from S.B. as well as other State's witnesses indicated that the time period covered in the indictment did not reflect the time period as outlined by their testimony. The testimony. The original indictment limited the time period in which the alleged incidents occurred to a period beginning on May 1, 2002, and ending July 1, 2002. However, testimony was adduced during the trial that the incidents occurred during the "summer of 2002." The trial court indicated that because the incidents occurred in the "summer of 2002," that would clearly include a period beyond July 1, 2002. Thus, the trial court allowed the State to amend the indictment to expand the time period up to and including August 31, 2002, in which the offenses occurred.
 {¶ 33} Parsons was charged with two separate violations of O.R.C. §2907.02(A)(1)(b). That section of the statute reads in pertinent part:
 {¶ 34} "(A)(1) No person shall engage in sexual conduct with another who is not the spouse of the offender or who is the spouse of the offender but is living separate and apart from the offender, when any of the following applies:
 {¶ 35} "(b) The other person is less than thirteen years of age, whether or not the offender knows the age of the person."
 {¶ 36} The precise date and time of the offense are not essential elements of the crime. State v. Mundy (1994), 99 Ohio App.3d 275, 296,650 N.E.2d 502, citing State v. Barnecut (1988), 44 Ohio App.3d 149,542 N.E.2d 353. Thus, a certain degree of inexactitude in averring the date of the offense is not per se impermissible or fatal to the prosecution. Mundy, supra, citing State v. Sellards (1985),17 Ohio St.3d 169, 478 N.E.2d 781. As this Court stated in Mundy, supra, "in many cases involving child sexual abuse, the victims are children of tender years who are simply unable to remember exact dates and times, particularly where the crimes involve a repeated course of conduct over an extended period of time."
 {¶ 37} At trial, Parsons objected to an expansion of the time frame because he stated that there was a possibility that he might have presented an alibi defense if he had known the time frame would have extended until August 31, 2002. The record, however, belies this contention. It is clear from the evidence adduced at trial and statements made by Appellant, himself, that Parsons admitted to a police detective that two incidents occurred during the summer of 2002 involving the inappropriate touching of the victim, S.B. The trial court found, and we agree, Parsons admitted the conduct, but his defense was that he did not complete penetration, so an alibi defense is inapplicable and was not presented. Parsons never claimed he was not present during the events described by the victim. An extension of the dates in the indictment, therefore, did not prejudice Parsons' ability to present a defense to the crimes for which he was charged. The "summer of 2002" clearly encompasses the month of August.
 {¶ 38} "A defendant is not prejudiced by the failure of the indictment to specify the dates and times upon which the charged offenses allegedly occurred if such failure does not impose a material detriment to the preparation of his defense. Where the defendant does not present an alibi defense, where he concedes being alone with the victims of the alleged sex offenses at various times throughout the relevant time frame, and where his defense is that the alleged touchings never happened, the inexactitude of dates or times in the indictment is not prejudicial error." Barnecut, supra. Although, here appellant did not deny the conduct, but rather minimized it. However, Parsons clearly admitted to at least two events in the designated time frame of the amendment.
 {¶ 39} Additionally, under Criminal Rule 7(D), the trial court is clearly vested with the authority to amend the indictment as it did in this case. The rule states in pertinent part:
 {¶ 40} "The court may at any time before, during, or after a trial amend the indictment, information, complaint, or bill of particulars, in respect to any defect, imperfection, or omission in form or substance, orof any variance with the evidence, provided no change was made in the name or identity of the crime charged. * * * *"
 {¶ 41} In the case at bar, Parsons admitted he was a participant in the conduct the victim alleged occurred during the "summer of 2002." Parsons' defense was simply that he did not penetrate S.B., digitally or otherwise. In expanding the dates in the indictment, the trial court did not change the identity of the crimes charged. Rather, the court expanded the dates to coincide with the evidence presented at trial. The court's action in this regard did not prejudice Parsons' ability to prepare for or present his defense at trial.
 {¶ 42} Parsons' second assignment is overruled.
 IV {¶ 43} Parsons' third and final assignment of error is as follows:
 {¶ 44} "The rape conviction is against the manifest weight of the evidence in that there is no independent evidence of penetration by the state's witnesses or any statements by the defendant which would tend to prove that very important element."
 {¶ 45} In his final assignment of error, Parsons contends that the evidence presented by the State failed to demonstrate that any penetration of the victim had occurred. Thus, the evidence was insufficient to prove rape on either occasion. Although he phrased his final assignment of error as a challenge to the manifest weight of the evidence, Parsons concedes that the main issue for us to decide is whether the evidence adduced at trial was legally sufficient to demonstrate that penetration had occurred. We conclude the record supports a finding of penetration.
 {¶ 46} The Ohio Supreme Court has clarified the distinction between reviewing questions of manifest weight of the evidence and questions of sufficiency of the evidence. In State v. Thompkins (1997),78 Ohio St.3d 380, the court found that with respect to sufficiency of the evidence, in essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law. Id. at 386. As this Court stated in State v. Lucas (September 21, 2001), Montgomery App. No. 18644, the proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus in Statev. Jenks (1991), 61 Ohio St.3d 259:
 {¶ 47} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."
 {¶ 48} A conviction for rape requires positive evidence, either direct or circumstantial, that sexual conduct of the type alleged in the indictment occurred on or about the time and place specified. Lucas,
supra, at 2. "Sexual conduct" is defined in O.R.C. § 2907.01(A):
 {¶ 49} "Sexual conduct means vaginal intercourse between a male and female; anal intercourse, fellatio, and cunnilingus between persons regardless of sex; and, without privilege to do so; the insertion, however slight, of any part of the body or any instrument, apparatus, or any other object into the vaginal or anal cavity of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse."
 {¶ 50} Parsons contends that the evidence adduced at trial is insufficient to demonstrate penetration, and thus, his rape conviction must be overturned. In support of his contention, Parsons points out the testimony of Dr. Ralph Hicks, who testified that he found no abnormalities when he conducted a genital and rectal exam of S.B. following the alleged incidents. Dr. Hicks, however, testified that it was normal for him to find no physical evidence that S.B. had been raped. In fact, Dr. Hicks testified that in cases such as S.B.'s, it would be abnormal for him to find physical evidence that a rape had occurred. Parsons also references his own testimony at trial, where he denied that he penetrated S.B. digitally or otherwise.
 {¶ 51} S.B. testified at length during the trial as to the incident on Hancock Street, describing how Parsons touched her "private" with his hands both "inside and outside." Moreover, S.B. testified that Parsons' hand touched the inside of her "private". She stated that she knew it was inside as opposed to outside "because she felt it." After this incident, S.B. complained of pain between her legs.
 {¶ 52} Under the standard announced in Jenks, supra, the jury clearly had sufficient evidence to find beyond a reasonable doubt that Parsons had penetrated the victim. The testimony provided by the victim, if believed by the jury, was sufficient to prove Parsons committed the rape for which he was charged.
 {¶ 53} Parsons final assignment of error is overruled.
Judgment affirmed.
Brogan, P.J. and Grady, J., concur.
[1] Throughout her testimony, S.B. used the term "private" when she referred to her own genitalia, as well as Parsons' genitalia.