[Cite as *State v. Sylvester*, 2016-Ohio-5710.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 103841**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## TRAVIS SYLVESTER

DEFENDANT-APPELLANT

## JUDGMENT:
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-14-588482-A

**BEFORE:** Stewart, P.J., Boyle, J., and Blackmon, J.

**RELEASED AND JOURNALIZED:** September 8, 2016

**ATTORNEY FOR APPELLANT**

P. Andrew Baker
11510 Buckeye Road
Cleveland, OH 44104


**ATTORNEYS FOR APPELLEE**

Timothy J. McGinty
Cuyahoga County Prosecutor

John Patrick Colan
Assistant County Prosecutor
Justice Center, 9th Floor
1200 Ontario Street
Cleveland, OH 44113

MELODY J. STEWART, P.J.:

{¶1}  A jury found defendant-appellant Travis Sylvester guilty of counts of rape, gross sexual imposition, and kidnapping — offenses committed against two of his girlfriend's children with whom he lived and who were less than ten years of age at the time of the crimes.  The 11 assignments of error raised in this appeal broadly challenge the evidence supporting his guilt, trial errors committed by the court and counsel, and sentencing.   We find no error and affirm.

## I. Evidentiary Issues

{¶2} Issues raising the sufficiency of the evidence are potentially dispositive — if found to have merit, they would result in acquittal — so we first address Sylvester's assignments of error that challenge the sufficiency of the evidence.  In his ninth assignment of error, Sylvester argues that the convictions for gross sexual imposition committed against each victim were not based on legally sufficient evidence; in his third assignment of error, he argues that the court had insufficient evidence to find him guilty of a sexual motivation specification; in his seventh assignment of error, he argues that the state failed to offer evidence of venue.

{¶3} "Sufficiency review essentially addresses whether 'the government's case was so lacking that it should not have even been submitted to the jury.'" *Musacchio v. United States*, 577 U.S.___, 136 S.Ct. 709, 715, 193 L.Ed.2d 639 (2016), quoting *Burks v. United States*, 437 U.S. 1, 16, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) (emphasis deleted). The Due Process Clause of the United States Constitution requires criminal convictions to be based on legally sufficient evidence. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). The evidence is considered "legally sufficient" if, after viewing the evidence most favorably to the state, "any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. This is a quantitative standard of evidence that looks only at whether any rational trier of fact could find that the evidence existed; in other words, did the state offer any evidence going to each essential element of the offense. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). If so, the evidence is legally sufficient for purposes of the Due Process Clause. The sufficiency of the evidence standard requires great deference to the trier of fact. A reviewing court "faced with a record of historical facts that supports conflicting inferences must presume — even if it does not affirmatively appear in the record — that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." *Cavazos v. Smith*, 565 U.S. 1, 132 S.Ct. 2, 181 L.Ed.2d 311 (2011), quoting *Jackson* at 326.

{¶4} In his ninth assignment of error, Sylvester complains that the state failed to offer evidence sufficient to prove the offense of gross sexual imposition as charged in Counts 5 and 12 of the indictment. With respect to Count 5, he maintains that the victim's testimony that he "humped" her did not establish the elements of gross sexual imposition.

{¶5} Count 5 of the indictment charged Sylvester with gross sexual imposition under R.C. 2907.05(A)(4): no person shall have sexual contact with another when the other person is less than 13 years of age. "Sexual contact" is defined in R.C. 2907.01(B) as "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, pubic region, or, if the person is a female, a breast, for the purpose of sexually arousing or gratifying either person."

{¶6} Victim J.D. testified that on the first occasion when Sylvester assaulted her, he "he humped me and put his penis in my mouth." When asked what she meant by "humped," she testified, "Like he — he will take off his pants. He will pull my pants all the way down, and he will start humping me" to the point where she felt "[s]omething going inside my body." J.D. went on to testify that Sylvester again "humped" her in a hotel room and again on August 18, 2014, the day after she reported his acts to her mother.

{¶7} The circumstances described by J.D. could cause a rational trier of fact to conclude that Sylvester's actions were directed towards J.D.'s erogenous zone for his own sexual gratification. J.D.'s testimony showed that the word "hump" was used as a term for simulated sexual intercourse or copulation. She testified that Sylvester ground his penis against her buttocks. Sylvester himself admitted in a police interview that he masturbated and ejaculated onto J.D.'s back. This was sufficient evidence to establish the elements of gross sexual imposition.

{¶8} Sylvester next argues that the state failed to offer sufficient evidence of gross sexual imposition with respect to Count 12 and victim J.B. He maintains that J.B. testified to conduct that might have established rape, but he was acquitted of the rape charge against that victim and no lesser included offense instruction on gross sexual imposition was given to the jury.

{¶9} Like Count 5, Count 12 charged gross sexual imposition under R.C. 2907.05(A)(4). J.B. testified that Sylvester put his penis "in my mouth and my bottom." Even if the jury did find Sylvester not guilty of rape based on J.B.'s testimony, a rational trier of fact could find testimony showing that Sylvester put his penis in J.B.'s "bottom" established that he touched her erogenous zone for purposes of sexual gratification.

{¶10} Sylvester elected to try certain sexually violent predator specifications to the court and was found guilty on all. In his third assignment of error, he complains that there was insufficient evidence that he was likely to commit sex crimes in the future.

**{¶11}** If an offender is charged with a violent sex offense, the indictment may contain a specification that the offender is a sexually violent predator. *See* R.C. 2941.148(A). Under R.C. 2971.01(H), a "sexually violent predator" means a person who "commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses." The offenses of rape under R.C. 2907.02 and gross sexual imposition under R.C. 2907.05(A)(4) are considered "violent sex offenses." *See* R.C. 2971.01(L)(1).

**{¶12}** Having been duly convicted of rape and gross sexual imposition, the only question before the court on the sexual violent predator specification was whether Sylvester was likely to engage in the future in one or more sexually violent offenses. The court can find guidance on that question from the non-exclusive list of factors set forth in R.C. 2971.01(H)(2).

**{¶13}** Sylvester argues that none of the R.C. 2971.01(H)(2) factors are present and that the court essentially found him guilty of the specification solely based on the underlying charges. While it is true that none of the express factors of R.C. 2971.01(H)(2) are applicable, the state pointed to statements Sylvester made during his police interview that would fall within the "any other relevant evidence" catchall provision of R.C. 2971.01(H)(2)(f). Significantly, Sylvester admitted that he was unable to control his sexual impulses when around "women." He testified that at the time he committed the offenses, he was in a relationship with the victims' mother and was "dating" three or four other women. While infidelity is not an indication that an offender will engage in future sexually violent offenses, Sylvester appeared to concede that he had an uncontrollable sexual impulse. He gave in to that impulse over a lengthy period of time in which he raped and masturbated on two children under the age of ten. That was compelling evidence to support a finding that Sylvester was likely to engage in one or more sexually oriented offenses in the future.

**{¶14}** Sylvester's seventh assignment of error is that the state failed to prove venue for Counts 2 and 5. J.D. testified that the events relating to those counts occurred in a hotel room when she and her family "were out of town to see my uncle." Sylvester argues that the state failed to prove the location of the "out of town" hotel, so it did not establish venue for those counts beyond a reasonable doubt.

**{¶15}** In *State v. Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, the Ohio Supreme Court stated:

Venue is not a material element of any offense charged. *State v. Smith*, 87 Ohio St.3d 424, 435, 2000 Ohio 450, 721 N.E.2d 93 (2000), citing *State v. Headley*, 6 Ohio St.3d 475, 477, 6 Ohio B. 526, 453 N.E.2d 716 (1983). The elements of the offense charged and the venue of the matter are separate and distinct. *State v. Draggo*, 65 Ohio St.2d 88, 90, 418 N.E.2d 1343 (1981). Nevertheless, venue is a fact that must be proved beyond a reasonable doubt unless it is waived by the defendant. *Headley* at 477.

*Id*. at ¶ 143.

**{¶16}** Sylvester did not object to venue at trial, so he forfeited all but plain error. *Id*. at ¶ 142. No plain error is shown. As the state notes, R.C. 2901.12(H) states that when an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, "the offender may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred."

**{¶17}** The evidence showed that despite there being only three separately charged instances of sexual assault, the two victims collectively testified that Sylvester assaulted them many times. This established a criminal course of conduct. In addition, the offenses involved the same victims and were committed as part of Sylvester's relationship to the victims. There is no question that some of the assaults occurred in Cuyahoga County, so the possibility that some of the assaults may have occurred in a different location does not defeat venue. *See State v. Fowler*, 27 Ohio App.3d 149, 154, 500 N.E.2d 390 (8th Dist.1985).

**{¶18}** Sylvester's eighth assignment of error is that the jury's guilty verdicts were against the manifest weight of the evidence. He argues that the physical evidence against him was "far from overwhelming" and that his inability to remain monogamous during his relationship with the victims' mother allowed the mother to persuade the victims to make false accusations against him.

**{¶19}** The manifest weight of the evidence standard of review requires us to review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Otten*, 33 Ohio App.3d 339, 340, 515 N.E.2d 1009 (9th Dist.1986). The use of the word "manifest" means that the trier-of-fact's decision must be plainly or obviously contrary to all of the evidence. This is a difficult burden for an appellant to overcome because the resolution of factual issues resides with the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus. The trier of fact has the authority to "believe or disbelieve any witness or accept part of what a witness says and reject the rest." *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

**{¶20}** Although the state did not offer a lot of physical evidence, what it did offer was compelling: the underwear that J.D. was wearing when she told her mother that she had just been sexually assaulted by Sylvester contained his DNA on the back panel. Sylvester argues that it was likely that his DNA found its way onto J.D.'s underwear because the underwear was in the same laundry basket as his soiled clothing. The jury rejected that theory, no doubt because the location of his DNA was consistent with J.D.'s testimony that Sylvester put his penis in her bottom. And consistent with the DNA evidence, examinations of both girls showed that they had recent or "fresh" anal tearing consistent with an external source of injury.

**{¶21}** In addition to the DNA evidence, Sylvester admitted that he told both a police detective and the victims' mother that he "jerked off" on J.D.'s back. What is more, he admitted in his police interview that he would "always" get an erection from any woman he saw and that he was "out of control" when he became aroused. He told the police that he had a great life but threw it all away for a "nut." The shocking nature of Sylvester's offenses were entirely consistent with these admitted sexual impulses.

**{¶22}** The jury did not lose it way by finding Sylvester guilty.

## II. Trial Errors

**{¶23}** We have grouped the following arguments under the heading of trial errors: that defense counsel was ineffective; that the court erred by allowing the state to amend the indictment; that jury instructions on kidnapping were defective; and that the court erred by allowing a substitute judge to accept the jury's verdict.

{¶24} The fifth assignment of error complains that the court erred by allowing the state to amend the sexually violent predator specifications to change the ages of the children from "under thirteen years of age but ten years of age or older at the time of the commission of the offense" to conform to trial evidence showing that both victims were less than ten years of age. Sylvester argues that this changed the punishment for the offense because the sexually violent predator specification required the court to impose a penalty of life in prison without parole.

{¶25} The age range specified in the indictment was indisputably a clerical error. This was so not only because the indictment also contained the dates of birth for both victims, but because both victims gave testimony confirming that their dates of birth were correctly stated in the indictment. Defense counsel had no objection to the amendment. Crim.R. 7(D) allows the court to amend an indictment with respect to any variance with the evidence, provided no change is made in the name or identity of the crime charged. The court's decision to allow an amendment to the specifications simply corrected the error in the indictment. *State v. Baer*, 7th Dist. Harrison No. 07 HA 8, 2009-Ohio-3248, ¶ 23.

{¶26} The fourth assignment of error is that defense counsel was ineffective for agreeing to the amendment of the indictment. We summarily overrule this assignment of error because defense counsel did not violate any essential duty by not objecting to the amendment. In discussions relating to his rejection of plea offers made by the state, Sylvester was told several times that he faced a life sentence without the possibility of parole. *See* tr. 19, 21, 53, 63. With all parties understanding that the indictment charged offenses against victims who were less than ten years of age, counsel did nothing more than concede a clear, clerical error.

{¶27} The tenth and eleventh assignments of error relate to the jury instructions on kidnapping.

{¶28} Counts 8 and 15 charged Sylvester with kidnapping under R.C. 2905.01(A)(4). That section states that no person shall by force, threat, or deception purposely remove or restrain the liberty of another for purpose of engaging in sexual activity with the person against the person's will. Both counts contained furthermore clauses stating that the victim of each offense was under 18 years of age. The verdict forms submitted to the jury required it to find as a matter of fact whether each victim was less than 18 years of age.

**{¶29}** Sylvester argues that the jury's finding that both victims were less than 18 years of age was irrelevant to a finding that the victims were less than ten years of age at the time he is alleged to have committed his offenses. Why this should matter is not clear. The jury's finding that the victims were under the age of 18 at the time of Sylvester's offenses did not preclude the court's independent verdict on the sexually violent predator specification that the victims were in fact less than ten years of age at the time of the offenses. And for purposes of the sexually violent predator specification, the court's determination that the victims were under the age of ten was all that mattered given that Sylvester agreed to waive a trial by jury on those specifications and have the judge hear them. It was entirely consistent for the jury to find that the victims were less than 18 years of age and for the court to make a second finding that the victims were also less than ten years of age. In any event, the jury verdict forms for the rape counts listed the date of birth for both victims and the jury returned verdicts affirming those dates of birth. No plain error is shown on the record.

**{¶30}** In addition, we disabuse Sylvester of the idea that the sexually violent predator specification somehow changed the degree of the felony for the kidnapping counts. Those counts were charged as first-degree felonies and remained so regardless of the specifications — a first-degree felony is the highest degree of felony, so the specifications charged in this case could not change that fact. A guilty finding on the specifications only enhanced the penalty; it did not change the degree of the offense. *State v. Hamm*, 8th Dist. Cuyahoga No. 103230, 2016-Ohio-2938, ¶ 7.

**{¶31}** When the jury returned to deliver its verdict, the judge presiding over the trial was unavailable, so a different judge accepted the jury's verdict. Sylvester did not object to this procedure, so he forfeited the claim for appellate review. *State v. Quarterman*, 140 Ohio St.3d 464, 2014-Ohio-4034, 19 N.E.3d 900, ¶ 15.

**{¶32}** Sylvester now argues in his first assignment of error that it was plain error for the substitute judge to take the jury's verdict in the absence of a record to show that the judge had been properly selected by the administrative judge of the court of common pleas. Sylvester has done nothing to show that he suffered any prejudice — the substitute judge did nothing more than receive the jury's verdict and set the matter for sentencing before the assigned judge. Sylvester's arguments rely on speculation as to what *might* have happened had the jury posed any questions to a substitute judge whose unfamiliarity with the case would leave the substitute judge unprepared to answer those questions. The jury asked no questions of the substitute judge, so Sylvester's arguments are moot. In any event, speculation does not show plain error. *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, 873 N.E.2d 1263, ¶ 108.

### III. Sentencing Issues

**{¶33}** The last category of error claimed by Sylvester relates to sentencing: the second assignment of error complains that the court erred by refusing to find some of the offenses were allied and should merge for sentencing; the sixth assignment of error complains that the court erred by ordering consecutive service of some of his sentences.

**{¶34}** A defendant cannot be convicted of more than one allied offense of similar import. R.C. 2941.25(A). We determine whether offenses are allied offenses of similar import within the meaning of R.C. 2941.25 by evaluating three separate factors: "the conduct, the animus, and the import." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, paragraph one of the syllabus.

> [A] defendant whose conduct supports multiple offenses may be convicted of all the offenses if any one of the following is true: (1) the conduct constitutes offenses of dissimilar import, (2) the conduct shows that the offenses were committed separately, or (3) the conduct shows that the offenses were committed with separate animus.

*Id.* at paragraph three of the syllabus.

**{¶35}** In his second assignment of error, Sylvester complains that the court should have merged Counts 1 (rape) and 8 (kidnapping) for sentencing. J.D. testified that the events giving rise to these counts arose when Sylvester "forced me to go in my mom's room, and I didn't want to, so he dragged me to my mom's room." She explained that Sylvester forced her to the room as follows: "Like he pushed me by my back. And a couple of times I had fell and then he pushed me to my mom's room." J.D.'s testimony showed that the force Sylvester applied to drag her into her mother's room was different from the rape itself, which consisted of his undressing her and putting his penis in her mouth. Under the second prong of the *Ruff* analysis, the kidnapping was committed separately from the rape.

{¶36} Sylvester also argues that Count 1 (rape) and Count 4 (gross sexual imposition) should have merged for sentencing. The evidence showed that the rape consisted of Sylvester putting his penis in J.D.'s mouth; the gross sexual imposition consisted of him rubbing his penis between her buttocks. We agree that these were separately committed offenses that do not merge.

{¶37} Finally, Sylvester argues that Count 12 (gross sexual imposition) and Count 15 (kidnapping) committed against J.B. should merge. J.B. testified that Sylvester "told me to come here, so I can go in the room." She complied and agreed that his sexual assaults "happened in the room." The state argues that Sylvester forced her into the room by intimidation — the evidence showed that Sylvester not only lived with the children, but disciplined them for disobedience. J.B. testified that Sylvester had "whopped" her before and that she capitulated to his order to go into the bedroom, stating, "I don't know what he would do to me if I didn't go so — I was scared." Although Sylvester's demand to J.B. did not involve the kind of overt force that J.D. experienced, J.B. was under compulsion to comply given Sylvester's position of authority over her and the corporal punishment she might receive if she did not obey. That compulsion was enough to establish her kidnapping as conduct committed separately from the gross sexual imposition.

{¶38} The sixth assignment of error is that the court's sentencing entry imposed consecutive sentences but that it never advised Sylvester during sentencing exactly which counts would be served consecutively.

**{¶39}** The court imposed the following sentences: Count 1, life without parole; Count 4, five years to life; Count 5, five years to life; Count 8, 15 years to life; Count 12, five years to life; and Count 15, 15 years to life. The court made the requisite findings for imposing consecutive sentences under R.C. 2929.14(C)(4), but did not indicate what sentences were to be served consecutively. In the sentencing entry, the court ordered that Counts 1, 4, 5, and 8 be served concurrently; that Counts 12 and 15 be served concurrently; but that Counts 1, 4, 5, and 8 be served consecutively to Counts 12 and 15.

**{¶40}** Sylvester did not object to his sentences at trial. By failing to object to the imposition of his consecutive sentences, he forfeited this issue, absent plain error. *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 152, citing *State v. Davis*, 116 Ohio St.3d 404, 2008-Ohio-2, 880 N.E.2d 31, ¶ 377.

**{¶41}** "Appellate courts have discretion to correct '[p]lain errors or defects affecting substantial rights[.]'" *In re A.G.*, Slip Opinion No. 2016-Ohio-3306, ¶ 19, quoting Crim.R. 52(B). In so exercising that discretion, we do so "with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *State v. Long*, 53 Ohio St.2d 91, 93, 372 N.E.2d 804 (1978), paragraph two of the syllabus.

**{¶42}** Sylvester cites no precedent to support his claim of error and, in fact, precedent contrary to his position exists. *See State v. Evans*, 4th Dist. Scioto No. 1675, 1988 Ohio App. LEXIS 1315, at *5 (Apr. 5, 1988). Even if we assume without deciding that the court's failure to specifically state at sentencing which counts were to be served consecutively was error, Sylvester did not suffer any prejudice from the error. He received a mandatory sentence of life in prison without the possibility of parole — any consecutive sentences were subsumed under the sentence of life without the possibility of parole. He will serve no additional time, so a remand would be pointless. There is no manifest miscarriage of justice to cause us to find plain error and reverse.

**{¶43}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MELODY J. STEWART, PRESIDING JUDGE

MARY J. BOYLE, J., and
PATRICIA ANN BLACKMON, J., CONCUR