[Cite as *State v. Luton*, 2018-Ohio-4708.]

# Court of Appeals of Ohio

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 106754

**STATE OF OHIO**

PLAINTIFF-APPELLEE

vs.

**BRYAN LUTON**

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED IN PART; MODIFIED IN PART;
VACATED IN PART; AND REMANDED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-605776-A

**BEFORE:** Celebrezze, J., E.A. Gallagher, A.J., and E.T. Gallagher, J.

**RELEASED AND JOURNALIZED:** November 21, 2018

**ATTORNEY FOR APPELLANT**

Susan J. Moran
55 Public Square, Suite 1616
Cleveland, Ohio 44113


**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor
BY:    Kelly Needham
Assistant Prosecuting Attorney
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


FRANK D. CELEBREZZE, JR., J.:

{¶1} Defendant-appellant, Bryan Luton ("appellant"), brings the instant appeal challenging his convictions for misuse of credit cards and grand theft.   Specifically, appellant argues that the state failed to establish that Cuyahoga County was the proper venue for the criminal proceedings, and that his convictions were not supported by sufficient evidence and against the manifest weight of the evidence.   After a thorough review of the record and law, this court affirms in part, modifies appellant's misuse of credit cards conviction, vacates the trial court's sentence for misuse of credit cards, and remands for resentencing consistent with this opinion.

## I.    Factual and Procedural History

{¶2} Appellant was employed by The Ridge Project, a nonprofit organization that provides assistance to incarcerated individuals and their families, from approximately 2012

through 2015. Appellant held the position of caseworker facilitator. In this capacity, appellant would visit prisons and halfway houses in Ohio and present The Ridge Project's curriculum regarding professional development and/or fatherhood. Appellant helped incarcerated individuals as they reentered society by assisting them with employment and housing. Appellant's employment required a lot of traveling.

{¶3} When he first started his employment, appellant drove his personal vehicle to the prisons and halfway houses that he visited. The Ridge Project would reimburse appellant for the miles he drove. Eventually, The Ridge Project issued appellant a company vehicle and a company credit card to purchase gasoline.[1] On or around April 2014, The Ridge Project noticed that appellant was using his company vehicle and company credit card for unauthorized purposes.

{¶4} The Ridge Project took a closer look at appellant's use of his company vehicle and credit card and noticed additional discrepancies between the number of miles that appellant actually drove and/or should have been driving, the number of miles appellant reported driving, and the frequency with which appellant was purchasing gasoline with the company credit card. For instance, appellant was purchasing gasoline and driving the company vehicle when he was on vacation.

{¶5} The Ridge Project's fiscal officer, Melissa Thomas, was unable to reconcile the discrepancies between (1) the amount of gasoline appellant was purchasing and the number of miles appellant was actually driving, and (2) the amount of gasoline appellant should have been purchasing and the number of miles he should have been driving. The Ridge Project's

---

[1] Although the credit card was primarily issued to purchase gasoline, appellant could use the credit card to purchase other employment-related items if he obtained The Ridge Project's approval. (Tr. 25.)

executive director and cofounder, Ron Tijerina, requested that appellant reimburse the organization for the unauthorized purchases. Appellant did not comply with this request. As a result, appellant's employment was terminated.

{¶6} In Cuyahoga C.P. No. CR-16-605776-A, the Cuyahoga County Grand Jury returned a two-count indictment on May 24, 2016, charging appellant with (1) misuse of credit cards, a fourth-degree felony in violation of R.C. 2913.21(B)(2), and (2) grand theft, a fourth-degree felony in violation of R.C. 2913.02(A)(2). Appellant was arraigned on June 14, 2016. He pled not guilty to the indictment.

{¶7} Appellant waived his right to a jury trial and elected to try the case to the bench. A bench trial commenced on December 11, 2017. The state presented the testimony of three witnesses: (1) Tijerina, (2) Thomas, and (3) The Ridge Project's director, Japhet Ntia. Appellant's wife testified on behalf of the defense. At the close of trial, the trial court found appellant guilty on both counts.

{¶8} On January 11, 2018, the trial court sentenced appellant to community control sanctions for a period of five years on each count. The trial court ordered the counts to run concurrently. Finally, the trial court ordered appellant to pay restitution to The Ridge Project in the amount of $11,080.52.

{¶9} On January 23, 2018, appellant filed the instant appeal challenging his convictions. He assigns three errors for review:

I.   The state failed to establish venue sufficient to sustain appellant's convictions.

II.   The state failed to present sufficient evidence of the offenses charged.

III.   Appellant's conviction is against the manifest weight of the evidence.

## II.   Law and Analysis

## A. Venue

{¶10} In his first assignment of error, appellant argues that the state failed to establish that Cuyahoga County was the proper venue for the misuse of credit cards and grand theft offenses charged in the indictment.

> Venue refers to the proper place in which to try a criminal matter. Under Article I, Section 10 of the Ohio Constitution and R.C. 2901.12, "evidence of proper venue must be presented in order to sustain a conviction for an offense." *State v. Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, ¶ 20. Article I, Section 10 of the Ohio Constitution provides, in relevant part: "In any trial, in any court, the party accused shall be allowed * * * a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed." Former R.C. 2901.12(A) provides: "The trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element thereof was committed."
>
> Venue is not a material element of an offense charged, but it is, nevertheless, a fact the state must prove beyond a reasonable doubt in a criminal prosecution unless it is waived by the defendant. *State v. Headley*, 6 Ohio St.3d 475, 477, 453 N.E.2d 716 (1983), citing *State v. Draggo*, 65 Ohio St.2d 88, 90, 418 N.E.2d 1343 (1981). "'A conviction may not be had in a criminal case where the proof fails to show that the crime alleged in the indictment occurred in the county where the indictment was returned.'" *Hampton* at ¶ 19, quoting *State v. Nevius*, 147 Ohio St. 263, 71 N.E.2d 258 (1947), paragraph three of the syllabus.

*State v. May*, 2015-Ohio-4275, 49 N.E.3d 736, ¶ 20-21 (8th Dist.).

{¶11} In the instant matter, we initially note that it is undisputed that appellant used his company credit card in Cuyahoga County. Appellant's credit card purchases were not, however, limited to Cuyahoga County.

{¶12} At the time appellant was employed by The Ridge Project, he resided in South Euclid, Ohio (Cuyahoga County). Appellant was not required to, and did not report to a particular office of The Ridge Project on a daily basis. He spent a majority of his time traveling to and from prisons and clients' homes.

{¶13} Based on the record before this court, it is unclear what office appellant was assigned to work out of. Tijerina testified that appellant was assigned to The Ridge Project's Wooster, Ohio office (Wayne County). (Tr. 23.) On the other hand, Thomas testified that appellant was assigned to The Ridge Project's Canton, Ohio office (Stark County). (Tr. 66.) Ntia testified that The Ridge Project is domiciled in Canton, Ohio. (Tr. 113.) The record reflects that The Ridge Project also has an office in McClure, Ohio (Henry County).

{¶14} Tijerina explained that as part of his employment, appellant was required to travel "[m]ainly in the Cuyahoga County area, Cleveland, and Wooster area, possibly in the other cities around Cleveland." (Tr. 23.) Appellant occasionally traveled to Richland Correctional Institution, Grafton Correctional Institution, Lake Erie Correctional Institution, and Mansfield Correctional Institution. *Id*.

{¶15} Appellant argues that the state "failed to produce actual evidence that illegal transactions occurred in Cuyahoga County," and that the state's witnesses and documentary evidence failed to establish that the offenses charged in the indictment took place in Cuyahoga County. Appellant's brief at 4. Specifically, appellant contends that the state failed to introduce receipts from the purportedly fraudulent credit card transactions, credit card statements indicating where the transactions occurred, and failed to elicit testimony regarding the locations where the transactions took place.

{¶16} After the state rested, defense counsel moved for a Crim.R. 29 judgment of acquittal. The record reflects, however, that defense counsel's motion was not premised on venue grounds, but rather focused on whether the state met its burden of production and proved the essential elements of the misuse of credit cards and grand theft offenses beyond a reasonable doubt. Because appellant did not object to venue in Cuyahoga County at trial, he forfeited all

but plain error. *State v. Sylvester*, 8th Dist. Cuyahoga No. 103841, 2016-Ohio-5710, ¶ 16, citing *State v. Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, ¶ 142.

{¶17} Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." A "[p]lain error is an obvious error or defect in the trial proceedings that affects a substantial right. Under this standard, reversal is warranted only when the outcome of the trial would have been different without the error." *State v. Wilcox*, 8th Dist. Cuyahoga No. 96079, 2011-Ohio-5388, ¶ 7.

{¶18} The state is not required to prove venue in express terms. Rather, venue can be established by the totality of the facts and circumstances of the case. *State v. Price*, 7th Dist. Mahoning No. 14 MA 28, 2015-Ohio-1199, ¶ 36, citing *State v. Chintalapalli*, 88 Ohio St.3d 43, 45, 2000-Ohio-266, 723 N.E.2d 111; *Headley*, 6 Ohio St.3d at 477, 453 N.E.2d 716; *Hampton*, 134 Ohio St.3d 447, 2012-Ohio-5688, 983 N.E.2d 324, at ¶ 19 ("'it is not essential that the venue of the crime be proven in express terms, provided it be established by all the facts and circumstances in the case, beyond a reasonable doubt, that the crime was committed in the county and state as alleged in the indictment'"), quoting *State v. Dickerson*, 77 Ohio St. 34, 82 N.E. 969 (1907), paragraph one of the syllabus.

{¶19} In this case, Ntia testified at trial that when the issues arose with appellant's company credit card, he went to the Canton Police Department to file a report. Ntia explained that the Canton police advised him that he had to pursue the matter in Cuyahoga County because that is where "the problems [with the fuel purchases] were made[.]" (Tr. 113-114.) Ntia testified that he knew that the issues with the fuel purchases took place in Cuyahoga County based on the receipts from the purchases.

{¶20} Thomas testified that as part of her investigation of appellant's credit card use, she reviewed appellant's timesheets,[2] accountability sheets,[3] credit card receipts, credit card statements, and mileage reports, going all the way back to the beginning of appellant's employment in 2012. Thomas created spreadsheets of appellant's fuel purchases based on the data she obtained from these documents.

{¶21} The spreadsheets, which were introduced at trial as state's exhibit Nos. 2, 3, and 4, included information about the location of the fuel purchases. Thomas testified that she determined where the fuel purchases were made by reviewing appellant's credit card receipts.

{¶22} Thomas highlighted appellant's suspicious transactions on the spreadsheets, for instance, when appellant drove zero miles in between two fuel purchases. Finally, Thomas explained that the investigation into appellant's credit card use began in the first place based on the following two transactions that occurred after appellant had driven zero miles: (1) a September 14, 2015 transaction at "Marathon, Cleveland," and (2) a September 19, 2015 transaction at "Shell, Cleveland."

{¶23} Tijerina testified about three specific incidents during which appellant misused his company credit card on April 23, 27, and 29, 2014. He explained that appellant was on vacation from April 22, 2014 through April 29, 2014. However, appellant purchased gasoline on three occasions during the period of time he was on vacation. On April 23 and 27, 2014, appellant purchased fuel at "Speedway, Newburgh Hts." On April 29, 2014, appellant purchased fuel at "BP, Cleveland."

---

[2] Timesheets are documents in which appellant would record various times, such as when he left his house, arrived at a particular prison, finished his duties, and when he arrived home. (Tr. 93.)

[3] Accountability sheets are documents in which appellant would describe, in more detail than timesheets, his daily activities, the locations he was at, and the number of miles he drove. (Tr. 91.)

**{¶24}** Based on the testimony of Ntia, Thomas, and Tijerina, we find that the state presented sufficient evidence to establish Cuyahoga County as the proper venue for the case. Furthermore, we find that the state presented sufficient evidence to prove venue under R.C. 2901.12(H)'s course of criminal conduct provision.

**{¶25}** R.C. 2901.12(H), governing venue in criminal cases, provides,

When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, the offender may be tried for all of those offenses *in any jurisdiction in which one of those offenses or any element of one of those offenses occurred.* Without limitation on the evidence that may be used to establish the course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:

(1) The offenses involved the same victim, or victims of the same type or from the same group.

(2) The offenses were committed by the offender in the offender's same employment, or capacity, or relationship to another.

(3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.

(4) The offenses were committed in furtherance of the same conspiracy.

(5) The offenses involved the same or a similar modus operandi.

(6) The offenses were committed along the offender's line of travel in this state,

regardless of the offender's point of origin or destination.

(Emphasis added.)

**{¶26}** In this case, the state argues that the record contains sufficient evidence demonstrating that appellant engaged in a course of criminal conduct pursuant to R.C. 2901.12(H) such that venue in Cuyahoga County was proper. Regarding the first factor, the state argues that The Ridge Project was the victim of all of the fraudulent transactions. Regarding the second factor, the state argues that appellant committed the offenses during his

employment with The Ridge Project. Regarding the third and fourth factors, the state argues that appellant committed the offenses in furtherance of the same purpose or objective and in furtherance of the same conspiracy. Regarding the fifth factor, the state argues that the offenses involved the same or similar modus operandi — using the company credit card at gas stations to steal money from The Ridge Project.

{¶27} After reviewing the record, we find that at least two of the prima facie indicators set forth in R.C. 2901.12(H) apply in this case. First, the misuse of credit cards and grand theft offenses involve the same victim — The Ridge Project. Second, the offenses were committed by appellant during his employment with The Ridge Project. Because the record demonstrates that appellant engaged in a course of criminal conduct, we find that the state presented sufficient evidence for a reasonable trier of fact to determine that venue in Cuyahoga County was proper.

{¶28} Based on the foregoing analysis, appellant's first assignment of error is overruled.

## B. Sufficiency

{¶29} In his second assignment of error, appellant argues that his convictions were not supported by sufficient evidence.

{¶30} A challenge to the sufficiency of the evidence supporting a conviction requires a determination of whether the state met its burden of production. *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997). When reviewing sufficiency of the evidence, an appellate court must determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the

syllabus. In a sufficiency inquiry, an appellate court does not assess whether the state's evidence is to be believed, but whether, if believed, the evidence admitted at trial supported the conviction. *Thompkins* at 387.

### 1. Thomas's Spreadsheets

{¶31} As an initial matter, we must address appellant's arguments regarding the spreadsheets of his fuel transactions that Thomas created. Appellant repeatedly contends that Thomas's spreadsheets were not actual evidence of his fuel transactions, but merely summaries of the fuel transactions.

{¶32} Appellant also raises several arguments regarding the spreadsheets and Thomas's testimony that pertain to the manifest weight of the evidence and are not properly raised in a sufficiency context. These arguments, which pertain to the credibility of the spreadsheets and Thomas's trial testimony rather than admissibility, will be addressed in further detail in the analysis of appellant's third assignment of error.

{¶33} After reviewing the record, we find that appellant invited any error with respect to the admission of the spreadsheets or the trial court's consideration of the spreadsheets. The record reflects that defense counsel did not object to the admission of the spreadsheets at trial. In fact, defense counsel stipulated to the admission of these exhibits. (Tr. 8.) Defense counsel merely asked the trial court to consider that the spreadsheets were "internal documents generated by The Ridge Project itself. They are not financial documents from financial institutions, rather they're an internal auditing." (Tr. 8.) By stipulating to the admission of Thomas's spreadsheets, any error with respect to the trial court's admission or consideration of the spreadsheets was invited by appellant.

**{¶34}** Pursuant to the invited error doctrine, "a party will not be permitted to take advantage of an error that he himself invited or induced the trial court to make." *State ex rel. The V Cos. v. Marshall*, 81 Ohio St.3d 467, 471, 692 N.E.2d 198 (1998). This doctrine applies when defense counsel "'was actively responsible' for the trial court's error" or "when a party has asked the court to take some action later claimed to be erroneous[.]" *State v. Campbell*, 90 Ohio St.3d 320, 324, 738 N.E.2d 1178 (2000), quoting *State v. Kollar*, 93 Ohio St. 89, 91, 112 N.E. 196 (1915). "Invited error extends to stipulations." *State v. Franks*, 8th Dist. Cuyahoga No. 103682, 2016-Ohio-5241, ¶ 8, citing *State v. McClendon*, 10th Dist. Franklin No. 11AP-354, 2011-Ohio-6235, ¶ 37; *see also Savage v. Savage*, 4th Dist. Pike No. 15CA856, 2015-Ohio-5290, ¶ 17, citing *State v. Rogers*, 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 20-21 ("[b]y stipulating to the admission of the [guardian ad litem's] report, [appellant] waived *any error* in its admission instead of merely forfeiting it by failing to timely assert an objection."). (Emphasis added.)

**{¶35}** Assuming, arguendo, that the invited error doctrine did not apply in this case, we find no merit to appellant's challenge to the trial court's admission or consideration of the spreadsheets. The state was not required to retain a forensic accountant or an expert witness to review the purchases appellant made with his company credit card and take the information from appellant's accountability sheets, timesheets, credit card receipts, mileage reimbursement logs, and credit card statements, and compile the information into a spreadsheet. These tasks were well within Thomas's purview as fiscal officer.

**{¶36}** For all of the foregoing reasons, we find no merit to appellant's challenges to the admission of Thomas's spreadsheets or testimony, or the trial court's consideration thereof.

### 2. Misuse of Credit Cards

**{¶37}** First, appellant challenges his conviction for misuse of credit cards. Appellant was convicted of misuse of credit cards in violation of R.C. 2913.21(B)(2), which provides, "[n]o person, with purpose to defraud, shall * * * [o]btain property or services by the use of a credit card, in one or more transactions, knowing or having reasonable cause to believe that the card has expired or been revoked, or was obtained, is retained, or is being used in violation of law[.]" R.C. 2913.21(D)(3) provides, in relevant part,

> [i]f the cumulative retail value of the property and services involved in one or more violations of division (B)(2), (3), or (4) of this section * * * is seven thousand five hundred dollars or more and is less than one hundred fifty thousand dollars, misuse of credit cards in violation of any of those divisions is a felony of the fourth degree.

**{¶38}** Pursuant to R.C. 2901.22(A): "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." "Defraud" means "to knowingly obtain, by deception, some benefit for oneself or another, or to knowingly cause, by deception, some detriment to another." R.C. 2913.01(B).

**{¶39}** In support of his sufficiency challenge, appellant argues that the state failed to demonstrate that his fuel transactions exceeded the scope of his employment, and that the state failed to present any actual evidence of the fuel transactions at trial, but rather relied on Thomas's spreadsheets which were merely summaries of the transactions.

**{¶40}** As an initial matter, we note that the record before this court does, in fact, contain statements from appellant's company credit card. The state presented appellant's credit card statements — a "Transactions & Details" report — for appellant's company-issued Capital One credit card at trial. *See* state's exhibit No. 10.

**{¶41}** Tijerina testified that appellant needed to seek approval when he used the credit card to purchase items other than gasoline. (Tr. 25.) Tijerina testified that he noticed appellant was using his company credit card while he was on vacation. He explained that appellant was on vacation from April 21 through April 29, 2014. The timesheets appellant submitted also indicate appellant was on vacation at this time. Although appellant was on vacation, he submitted gas station receipts from Speedway and BP for $75, $75, and $70. (Tr. 27.) Tijerina advised appellant that he needed to reimburse The Ridge Project for these unauthorized transactions. Appellant failed to do so.

**{¶42}** Thomas investigated appellant's financial activities. She determined that appellant purchased gas while he was on vacation and also purchased more gas than his company vehicle would have required to drive the distances that appellant reported traveling. Based on her analysis, Thomas concluded that appellant made unauthorized purchases with his company credit card in 2013 totaling $3,251.15, 2014 totaling $6,408.58, and 2015 totaling $2,373.34, for an aggregate total of $12,033.07.

**{¶43}** Ntia received a call from Tijerina regarding the fuel purchases appellant made when he was on vacation. Ntia called appellant to inquire about the purchases. Appellant informed Ntia that he was in Atlanta. Ntia asked for appellant's mileage log, a log that appellant was required to maintain in his company vehicle, but not required to submit to the company. Ntia attempted to get the mileage log from appellant on or around September 18, 2015. Ntia made subsequent unsuccessful attempts to obtain the mileage log from appellant on September 27, 28, 29, and 30, 2015. *See* state's exhibit No. 13. Ntia testified that he was never able to recover the mileage log from appellant, and as a result, they were not able to compare appellant's mileage log to the receipts from appellant's fuel purchases.

{¶44} Ntia testified that The Ridge Project attempted to verify appellant's fuel purchases by comparing the purchases appellant made to his timesheets and accountability sheets. Based on these comparisons, Ntia determined that appellant's fuel purchases did "not add up." (Tr. 103.) After making this determination, Ntia provided Tijerina with a detailed report of the situation and then turned the matter over to the fiscal department.

{¶45} After reviewing the record, we find that the testimony of Tijerina, Thomas, and Ntia, if believed, was sufficient to support appellant's misuse of credit cards conviction. Appellant's second assignment of error is overruled in this respect.

{¶46} Appellant further argues that there was insufficient evidence that he misused the company credit card for a consecutive period of 90 days.

{¶47} R.C. 2913.21(D)(3) provides, in relevant part,

> If the cumulative retail value of the property and services involved in one or more violations of division (B)(2), (3), or (4) of this section, which violations involve one or more credit card accounts and *occur within a period of ninety consecutive days* commencing on the date of the first violation, is seven thousand five hundred dollars or more and is less than one hundred fifty thousand dollars, misuse of credit cards in violation of any of those divisions is a felony of the fourth degree.

(Emphasis added.)

{¶48} The indictment charged appellant with fourth-degree felony misuse of credit cards, alleging that appellant's violation of R.C. 2913.21 occurred within a period of 90 consecutive days. This language elevated the offense from a first-degree misdemeanor to a fourth-degree felony. The trial court found appellant guilty of fourth-degree felony misuse of credit cards.

{¶49} As an initial matter, we note that appellant did not raise this issue below and thus, has waived all but plain error. *See State v. Fisher*, 8th Dist. Cuyahoga No. 101365, 2015-Ohio-597, ¶ 33. In order to prevail on a claim governed by the plain error standard, an

appellant must demonstrate that the outcome at trial would have clearly been different but for the alleged error. *Id.*, citing *State v. Waddell*, 75 Ohio St.3d 163, 166, 661 N.E.2d 1043 (1996).

{¶50} The state acknowledges that the evidence did not demonstrate that the violations occurred within a period of 90 consecutive days. Accordingly, the state concedes that the trial court erred by finding appellant guilty of fourth-degree felony misuse of credit cards.

{¶51} After reviewing the record, we find that the trial court committed plain error in convicting appellant of fourth-degree felony misuse of credit cards. As the state concedes, the evidence does not establish that appellant misused the company credit card for a period of 90 consecutive days. As noted above, however, the evidence in the record does support a conviction for first-degree misdemeanor misuse of credit cards.

{¶52} "It is well established that this court has the authority to reduce a conviction to that of a lesser included offense when it is supported by the record, rather than ordering an acquittal or a new trial." *State v. Reddy*, 192 Ohio App.3d 108, 2010-Ohio-5759, 948 N.E.2d 454, ¶ 35 (8th Dist.), citing *State v. Davis*, 8 Ohio App.3d 205, 207, 456 N.E.2d 1256 (8th Dist.1982), and *State v. Sumlin*, 8th Dist. Cuyahoga No. 37559, 1978 Ohio App. LEXIS 10489 (June 29, 1978). Although first-degree misdemeanor misuse of credit cards is not a lesser included offense of fourth-degree felony misuse of credit cards, this court has applied the same rationale in modifying a kidnapping conviction from a first-degree felony to a second-degree felony when the evidence supported a conviction for the latter. *See Fisher*, 8th Dist. Cuyahoga No. 101365, 2015-Ohio-597, at ¶ 38.

{¶53} Accordingly, we modify appellant's misuse of credit cards conviction from a fourth-degree felony to a first-degree misdemeanor. *See Fisher* at ¶ 38, citing *Reddy* at ¶ 35.

Here, although we are not dealing with a lesser included offense, we find that the same rationale is applicable.

{¶54} Based on the foregoing analysis, we sustain appellant's second assignment of error in this respect. Appellant's misuse of credit cards conviction is modified from a fourth-degree felony to a first-degree misdemeanor.

### 3. Grand Theft

{¶55} Second, appellant challenges his conviction for grand theft. Appellant was convicted of grand theft, in violation of R.C. 2913.02(A)(2), which provides, "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services * * * [b]eyond the scope of the express or implied consent of the owner or person authorized to give consent[.]"

{¶56} In support of his sufficiency challenge, appellant argues that the state failed to demonstrate that he used The Ridge Project's property or services in a manner that exceeded the scope of the organization's express or implied consent, and that the value of the property or services stolen was more than $7,500 and less than $150,000. Appellant contends that Thomas failed to account for the fact that his employment responsibilities, which included meeting the needs of clients, occasionally required him to work outside of traditional dates and times. For instance, he asserts that he would occasionally be required to help a client move when he was on vacation, and that he would deliver Christmas presents to clients when The Ridge Project's offices were closed.

{¶57} Tijerina testified that appellant was not authorized to use his company vehicle while he was on vacation. Despite the company's policy, however, appellant purchased gas with the company credit card on multiple occasions while he was on vacation. After he learned

that appellant was using the company vehicle and purchasing gas with the company credit card while he was on vacation, Tijerina brought the issue to the attention of the fiscal department and the deputy of operations, Chris Ridley. Tijerina also contacted appellant and asked about the fuel purchases. Appellant advised Tijerina that somebody in his family was sick, and as a result, he needed to travel out of state. Tijerina told appellant to reimburse the organization for the unauthorized purchases and to refrain from using the company credit card. Tijerina confronted appellant again when he discovered the full extent of appellant's unauthorized purchases. Appellant informed Tijerina that he would reimburse The Ridge Project, but he did not do so. At this point, appellant's employment was terminated.

{¶58} Ntia testified that appellant was not authorized to use the company vehicle for private or personal reasons unless he requested and received prior written approval from management. Ntia explained that appellant never submitted any paperwork requesting permission to use his company vehicle for personal reasons.

{¶59} Ntia did not notice any discrepancies between the miles appellant drove and the miles appellant reported driving when appellant was driving his own personal vehicle. When appellant was issued a company vehicle, he was required to keep a mileage log, recording the mileage every time he got into the car. Unlike the mileage reimbursement logs, which appellant maintained and submitted to the organization when he was driving his personal vehicle, appellant was not required to submit the mileage logs to The Ridge Project. Rather, appellant was only required to maintain the log and keep it in the company vehicle.

{¶60} When appellant received a company vehicle, he was also issued a company credit card for the primary purpose of purchasing gasoline. Because appellant kept the mileage log in his vehicle, the company was unable to compare appellant's mileage log to the fuel receipts that

appellant submitted to the organization. Ntia testified that around September 27, 2015, however, The Ridge Project wanted to compare appellant's mileage log to the receipts from his fuel transactions because "[appellant's fuel] purchases were outrageous." (Tr. 97.)

**{¶61}** Ntia called appellant to inquire about the purchases he made while he was on vacation. Appellant stated that he was moving a client. Appellant subsequently informed Ntia that he traveled to Atlanta. At this point, Ntia asked appellant for his mileage log. Ntia made several attempts to obtain the mileage log from appellant in September 2015. *See* state's exhibit No. 13. Ntia testified that he was never able to recover the mileage log from appellant, and as a result, they were not able to compare appellant's mileage log to the receipts from appellant's fuel purchases. Ntia explained that when the organization compared appellant's fuel transactions to appellant's timesheets and accountability sheets, appellant's fuel transactions did "not add up." (Tr. 103.)

**{¶62}** Finally, as noted above, Thomas investigated appellant's company credit card usage. Thomas concluded that appellant made unauthorized purchases with his company credit card in 2013 totaling $3,251.15, 2014 totaling $6,408.58, and 2015 totaling $2,373.34, for an aggregate total of $12,033.07. (Tr. 60-61.)

**{¶63}** After reviewing the record, we find that the testimony of Tijerina, Ntia, and Thomas, if believed, is sufficient to support appellant's grand theft conviction. Appellant's second assignment of error is overruled in this respect.

### 4. R.C. 2913.61

**{¶64}** During oral arguments, appellant appeared to argue that the state failed to present sufficient evidence that the cumulative retail value of the property and services pertaining to the misuse of credit cards offense or the value of the property or services stolen pertaining to the

grand theft offense was between $7,500 and $150,000. Specifically, appellant appeared to contend that R.C. 2913.61(C)(1) and (2), governing aggregation of multiple theft offenses, did not apply, and thus, the state was not permitted to aggregate the amounts of the individual credit card transactions.

{¶65} Appellant did not raise this argument — either in the trial court or in his appellate brief. "As a general matter, a party cannot present new arguments for the first time on appeal that were not raised below, and a trial court cannot be said to have abused its discretion by failing to consider arguments that were never presented to it." *State v. D.K.*, 8th Dist. Cuyahoga No. 106539, 2018-Ohio-2522, ¶ 17, citing *State v. Pratts*, 8th Dist. Cuyahoga No. 104235, 2016-Ohio-8053, ¶ 43, and *Wells Fargo Bank, N.A. v. Bluhm*, 6th Dist. Erie No. E-13-052, 2015-Ohio-921, ¶ 17; *see also State v. Phillips*, 74 Ohio St.3d 72, 93, 656 N.E.2d 643 (1995) ("An issue is waived, absent a showing of plain error, if it is not raised at the trial level.").

{¶66} Even if we were to consider appellant's argument that the state was not permitted to aggregate the amounts of the individual credit card transactions, we would find no error. Appellant committed the grand theft and misuse of credit card offenses while he was in the same employment with The Ridge Project, and the company was the only victim. *See State v. Preztak*, 181 Ohio App.3d 106, 2009-Ohio-621, 907 N.E.2d 1254, ¶ 14-15 (8th Dist.).

## C. Manifest Weight

{¶67} In his third assignment of error, appellant argues that his convictions are against the manifest weight of the evidence.

{¶68} In contrast to a sufficiency argument, a manifest weight challenge questions whether the state met its burden of persuasion. *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 12. A reviewing court "weighs the evidence and all reasonable inferences,

considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 388, 678 N.E.2d 541. A conviction should be reversed as against the manifest weight of the evidence only in the most "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶69} Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. *State v. Bradley*, 8th Dist. Cuyahoga No. 97333, 2012-Ohio-2765, ¶ 14, citing *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967). The trier of fact is best able "to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 24. The jury may take note of any inconsistencies and resolve them accordingly, "believ[ing] all, part, or none of a witness's testimony." *State v. Raver*, 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶ 21, citing *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964).

{¶70} In support of his manifest weight challenge, appellant relies on the arguments he raised in challenging the sufficiency of the evidence. He further argues, "the [c]ourt impermissibly relied upon a summary of purported evidence rather than upon an examination of actual evidence. Since no actual evidence was introduced at trial, the weight of the evidence falls short of a conviction." Appellant's brief at 10.

{¶71} In challenging Thomas's spreadsheets and trial testimony, appellant argues that (1) Thomas is not a forensic accountant; (2) Thomas did not have all of the necessary documentation

when she compiled the spreadsheets, and as a result, had to fill in some gaps by looking information up online; (3) some of the data she entered into the spreadsheets were estimates rather than exact figures; and (4) as an employee of The Ridge Project, Thomas's spreadsheets and testimony were biased. As noted above, defense counsel stipulated to the admission of the spreadsheets at trial.

{¶72} After reviewing the record, we cannot say that this is an exceptional case in which the trial court clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered, or that the evidence weighs heavily against appellant's convictions.

{¶73} Appellant's arguments challenging Thomas's spreadsheets pertain to the credibility of the spreadsheets and Thomas's trial testimony, rather than the admissibility of the evidence. The trial court, as the trier of fact, was in the best position to make this credibility determination.

{¶74} The record reflects that the tasks of reviewing appellant's credit card transactions and creating the spreadsheets were well within Thomas's purview as The Ridge Project's fiscal officer. Thomas testified that she served as fiscal officer for six years and that she deals with all of The Ridge Project's financial aspects. Thomas has also worked in a financial capacity for 35 years.

{¶75} Thomas testified regarding the process she used and the information she reviewed in order to generate the spreadsheets of appellant's fuel transactions. Thomas explained that she created the spreadsheets using data from appellant's accountability sheets, timesheets, credit card receipts, mileage reimbursement logs, and credit card statements. Thomas acknowledged that she had to look up some of the information she included in the spreadsheets online. For instance, she used the website "Mapquest" in order to determine how far appellant drove from

his house to the locations to which he reported on a particular day. Additionally, if the price per gallon of gasoline was not listed on a particular fuel receipt that appellant submitted, Thomas looked up the pricing of gasoline in the area online. (Tr. 48.)

{¶76} Finally, on cross-examination, Thomas testified about the potential problems regarding the process she used to generate the spreadsheets. For instance, she acknowledged that she did not take into account the effect that factors such as drag, friction, or road conditions would have on gas mileage. (Tr. 76.)

{¶77} The trial court, as the trier of fact, had sufficient information about the process Thomas used to create the spreadsheets, the documents she reviewed, and the potential problems with the process in order to weigh the credibility of the spreadsheets and Thomas's trial testimony. Furthermore, the trial court was in the best position to weigh the credibility of Thomas and her proffered testimony about the spreadsheets she created.

{¶78} Finally, the defense's theories of the case were that (1) appellant's fuel transactions were legitimate and authorized expenses in response to the needs of his clients, and/or (2) any discrepancies regarding the fuel transactions were the result of appellant's failure to properly maintain his activity logs, poor management, or The Ridge Project's failure to establish a clear policy regarding company credit cards and vehicles. On the other hand, the state's theory of the case was that appellant deliberately misused his company credit card and company vehicle in a manner that exceeded the scope of his employment and The Ridge Project's consent. Appellant's convictions are not against the manifest weight of the evidence simply because the trial court chose to believe the state's version of the events rather than appellant's theories. *See State v. Nelson*, 2017-Ohio-5568, 93 N.E.3d 472, ¶ 58 (8th Dist.).

{¶79} For all of the foregoing reasons, appellant's third assignment of error is overruled.

### III. Conclusion

**{¶80}** After thoroughly reviewing the record, we affirm appellant's grand theft conviction, modify appellant's misuse of credit cards conviction from a fourth-degree felony to a first-degree misdemeanor, vacate the trial court's sentence on the fourth-degree felony misuse of credit cards conviction, and remand the matter to the trial court for resentencing on the first-degree misdemeanor misuse of credit cards conviction only.

**{¶81}** The record contains sufficient evidence establishing that Cuyahoga County is a proper venue for the criminal proceedings; appellant's convictions for grand theft and first-degree misdemeanor misuse of credit cards are supported by sufficient evidence and are not against the manifest weight of the evidence.

**{¶82}** Judgment affirmed in part, modified in part, vacated in part, and remanded for resentencing.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed in part, any bail pending appeal is terminated. Case remanded to the trial court for resentencing.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


FRANK D. CELEBREZZE, JR., JUDGE

EILEEN A. GALLAGHER, A.J., and
EILEEN T. GALLAGHER, J., CONCUR