DECISION AND JOURNAL ENTRY
{¶ 1} Appellant, Joseph Likosar, appeals from his conviction in the Medina County Court of Common Pleas for aggravated vehicular assault. We affirm.
 I. {¶ 2} On December 30, 2002, the Medina County Grand Jury indicted Mr. Likosar on two separate counts: (1) felonious assault, in violation of R.C. 2903.11(A)(1) and (2); and (2) aggravated vehicular assault, in violation of R.C. 2903.08(A)(2). The State subsequently moved to amend the indictment. The trial court granted the State's motion, thereby separating count one into two separate counts of felonious assault.
 {¶ 3} A jury trial followed. The jury found Mr. Likosar not guilty of both counts of felonious assault, and found him guilty of aggravated vehicular assault. The trial court sentenced him accordingly. Mr. Likosar timely appeals, and raises four assignments of error for review. To facilitate review, we will address assignments of error one and two together.
 ii. a. First Assignment of Error
"The trial court erred in failing to grant [Mr. Likosar's] motion for acquittal pursuant to Crim.r. 29."
 Second Assignment of Error
"[MR. LIKOSAR'S] CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 4} In his first and second assignments of error, Mr. Likosar challenges the adequacy of the evidence produced at trial. Specifically, Mr. Likosar avers that his conviction for aggravated vehicular assault was based on insufficient evidence and was against the manifest weight of the evidence. An evaluation of the weight of the evidence, however, is dispositive of both issues in this case. Mr. Likosar's first and second assignments of error lack merit.
 {¶ 5} As a preliminary matter, we note that sufficiency of the evidence produced by the State and weight of the evidence adduced at trial are legally distinct issues. State v.Thompkins (1997), 78 Ohio St.3d 380, 386.
 {¶ 6} Crim.R. 29(A) provides that a trial court "shall order the entry of a judgment of acquittal * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." A trial court may not grant an acquittal by authority of Crim.R. 29(A) if the record demonstrates that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt.State v. Wolfe (1988), 51 Ohio App.3d 215, 216. In making this determination, all evidence must be construed in a light most favorable to the prosecution. Id. "In essence, sufficiency is a test of adequacy." Thompkins, 78 Ohio St.3d at 386.
 {¶ 7} "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion." State v.Gulley (Mar. 15, 2000), 9th Dist. No. 19600, citing Thompkins,78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
"an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986),33 Ohio App.3d 339, 340.
 {¶ 8} This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
"Because sufficiency is required to take a case to the jury, a finding that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." (Emphasis omitted.) State v. Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462.
 {¶ 9} Mr. Hunt was found guilty of aggravated vehicular assault, in violation of R.C. 2903.08(A)(2). R.C. 2903.08(A)(2) provides that no person shall recklessly cause serious physical harm to another person while operating or participating in the operation of a motor vehicle. "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." R.C.2901.22(C).
 {¶ 10} At trial, Officer Brett McNaab testified that he responded to a call from dispatch regarding an incident at the Medina Lanes Bowling Alley on November 25, 2002. He further testified that when he arrived at the bowling alley, he observed an individual lying face down; this individual was bleeding from the head, and had other injuries to his buttocks and legs.
 {¶ 11} David Zufan ("Zufan"), the victim, testified that he was bowling in a league at Medina Lanes Bowling Alley on November 25, 2002. Zufan stated that a member from the Paladar Masonry team had pulled down Mr. Likosar's pants, and that subsequently, comments were exchanged between the Paladar Masonry team and Mr. Likosar's team. Zufan remarked that Mr. Likosar's team directed the following comments to the Paladar Masonry team: "[we are] going to kick their ass," and "let's take them outside and fight[.]" Finally, Zufan stated that he does not remember being hit by the car.
 {¶ 12} Carla Wood ("Wood"), Edward Bigley ("Bigley"), Joanie Crist ("Crist"), Glenn Lewis ("Lewis"), and Patrick Henderson ("Henderson") testified that Mr. Likosar was "depantsed" by a member of the Paladar Masonry team. They further testified that they later saw Mr. Likosar get into his automobile, drive toward the crowd, stop momentarily before reaching the crowd, resume driving his automobile, and hit Zufan with his automobile. Wood further explained that she heard the tires on Mr. Likosar's automobile squeal, and he did not "honk his horn[,] * * * flash his lights[,] * * * or * * * do anything to warn the crowd to get out of his way[.]" Henderson also testified that Mr. Likosar did not "honk [his] horn" or "flash [his] lights." Bigley added that "all of a sudden" Mr. Likosar resumed driving, "it was like he floored it." Crist also noted that Mr. Likosar "floored it[,]" and stated that she saw the tires spinning on Zufan.
 {¶ 13} Frank Noggle ("Noggle") testified that he saw an individual get "depantsed[,]" but was not positive as to who had been "depantsed." He further testified that he saw Mr. Likosar get into his automobile and "[spin] the tires as he peeled out of his parking space[.]" Noggle stated that Mr. Likosar stopped in front of the crowd of people, and that it "looked" like he waved his hands to get the crowd out of his way. Finally, Noggle asserted that he observed the tires spinning on Zufan, and that Mr. Likosar did not stop when he was spinning his tires on Zufan.
 {¶ 14} Detective Curt Vozar testified that he arrived at the scene on November 25, 2002. He stated that he observed a rubber mark on the access driveway to the parking lot, and it appeared that someone had spun his or her tires while exiting the parking lot.
 {¶ 15} Detective Michael Wesner testified that he spoke with Mr. Likosar. Specifically, Detective Wesner related that Mr. Likosar admitted that he had struck an individual with his automobile. Detective Wesner also stated that Mr. Likosar said, "[I] didn't mean to hit them, or him that hard[,] * * * [I] didn't mean to hit him as hard as [I] did[.]" Detective Wesner testified that Mr. Likosar told him that "[h]e wanted to scare them and move them away[;]" therefore, he "hit the gas[.]"
 {¶ 16} Dr. Thomas Thompson testified as to the injuries sustained by Zufan as a result of the assault. Specifically, Dr. Thompson described his injuries as a right clavicle fracture; a dislocated left hip; a long, deep laceration on both knees; an open fracture on his left ankle; a right hip socket fracture; fractures of three lumbar vertebrae; bruised lungs; and water on his lungs. Dr. Thompson additionally remarked that he had a tire track distinctly printed on his abdomen. Lastly, Dr. Thompson concluded that Zufan's injuries were consistent with being hit by an automobile.
 {¶ 17} Following the State's witnesses, Mr. Likosar presented his defense. Tim Flanigan ("Flanigan") testified that he saw Mr. Likosar get "depantsed" at the bowling alley. He further testified that he did not see Mr. Likosar hit anyone with his hands or become involved in an argument. Flanigan stated that he did see Mr. Likosar get into his automobile, drive toward the crowd, and stop in front of the crowd. He further stated that Mr. Likosar motioned to the individuals to move by waving his hands, and that everyone in the crowd moved. Lastly, Flanigan acknowledged that he did not see Mr. Likosar strike Zufan with his automobile.
 {¶ 18} After a thorough review of the record, we cannot conclude that the trier of fact lost its way and created a manifest miscarriage of justice when it convicted Mr. Likosar of aggravated vehicular assault. Consequently, we also conclude that Mr. Likosar's assertion that the State did not produce sufficient evidence to support the conviction is also without merit. Accordingly, Mr. Likosar's first and second assignments of error are overruled.
 B. Third Assignment of Error
"The trial court erred in admitting graphic and gruesome photographs into evidence for the mere purpose of inflaming the passions of the jury."
 {¶ 19} In his third assignment of error, Mr. Likosar avers that the trial court erred in admitting into evidence graphic and gruesome photographs, as these pictures had no probative value, served merely to inflame the passions of the jury, and prejudiced Mr. Likosar. We disagree.
 {¶ 20} The admission of photographs is within the sound discretion of the trial court. State v. Landrum (1990),53 Ohio St.3d 107, 121, citing State v. Maurer (1984),15 Ohio St.3d 239, 264; State v. Hill (1967), 12 Ohio St.2d 88, 90; Evid.R. 403 and 611(A). As such, an appellate court will not disturb a trial court's decision regarding the admission of photographs absent an abuse of discretion. See Landrum,53 Ohio St.3d at 121; Hill, 12 Ohio St.2d at 90; State v. Rogers (Dec. 29, 2000), 1st Dist. No. C-000299, citing State v. Morales (1987),32 Ohio St.3d 252, 257. An abuse of discretion is more than an error of judgment, but instead demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." Pons v.Ohio State Med. Bd. (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Id.
 {¶ 21} "`Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. Generally, "[a]ll relevant evidence is admissible[.]" Evid.R. 402. However, "[a]lthough relevant, evidence is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice, of confusion of the issues, or of misleading the jury." Evid.R. 403(A).
 {¶ 22} "Although a photograph may be rendered inadmissible by its inflammatory nature, the mere fact that it is gruesome or horrendous is not sufficient to render it inadmissible if the trial court, in the exercise of its discretion, feels that it would prove useful to the jury." State v. Woodards (1966),6 Ohio St.2d 14, 25, citing People v. Brubaker (1959),53 Cal.2d 37, 48, 346 P.2d 8. "The real question is whether the probative value of such photographs is outweighed by the danger of prejudice to the defendant." Woodards, 6 Ohio St.2d at 25. See, also, Rogers, supra.
 {¶ 23} In the instant case, the photographs that Mr. Likosar challenges as graphic and gruesome show the various injuries Zufan sustained as a result of the assault. Although some of the photographs depict injuries that are somewhat bloody, we cannot find that these photographs are gruesome or horrendous. SeeWoodards, 6 Ohio St.2d at 25. Moreover, we find the photographs were relevant to demonstrate the element of "serious physical harm" with respect to the aggravated vehicular assault charge. See R.C. 2903.08(A). Consequently, we conclude that the trial court did not abuse its discretion when it admitted into evidence the photographs challenged by Mr. Likosar. Accordingly, Mr. Likosar's third assignment of error is overruled.
 c. Fourth Assignment of Error
"It was ineffective assistance of counsel for counsel to bring forth evidence that [MR. Likosar] consumed alcohol prior to the incident."
 {¶ 24} In his fourth assignment of error, Mr. Likosar contends that he was denied effective assistance of counsel as a result of his counsel's cross-examination of Detective Michael Wesner, as his testimony revealed that Mr. Likosar had consumed alcohol on the night of the incident. Mr. Likosar's contention lacks merit.
 {¶ 25} The United States Supreme Court enunciated a two-part test to determine whether counsel's assistance was ineffective as to justify a reversal of sentence or conviction. Strickland v.Washington (1984), 466 U.S. 668, 687, 80 L.Ed.2d 674. "First, the defendant must show that counsel's performance was deficient." Id. To show the deficiencies in counsel's performance, a defendant must prove "errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Id. Second, a defendant must establish that counsel's deficient performance resulted in prejudice to the defendant which was "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Id. "Ultimately, the reviewing court must decide whether, in light of all the circumstances, the challenged act or omission fell outside the wide range of professionally competent assistance." State v. DeNardis, (Dec. 29, 1993), 9th Dist. No. 2245, citing Strickland, 466 U.S. at 690.
 {¶ 26} Upon reviewing counsel's performance, there is a strong presumption that counsel's actions were part of a valid trial strategy. Strickland, 466 U.S. at 689. "A strong presumption exists that licensed attorneys are competent and that the challenged action is the product of a sound strategy." Statev. Watson (July 30, 1997), 9th Dist. No. 18215. We note that there are numerous avenues through which counsel can provide effective assistance of counsel in any given case, and debatable trial strategies do not constitute ineffective assistance of counsel. State v. Gales (Nov. 22, 2000), 9th Dist. No. 00CA007541; State v. Clayton (1980), 62 Ohio St.2d 45, 49. In general, trial counsel's decision to cross-examine a witness and the extent of such cross-examination are tactical matters. Statev. Flors (1987), 38 Ohio App.3d 133, 139. As such, decisions regarding cross-examination are within trial counsel's discretion, and cannot form the basis for a claim of ineffective assistance of counsel. Id. (concluding that the extent of trial counsel's cross-examination is a matter of trial strategy and does not constitute ineffective assistance of counsel). Accordingly, we do not conclude that trial counsel was ineffective as contended by Mr. Likosar. See id.; State v.Ellison, 6th Dist. No. L-02-1292, 2003-Ohio-6748, at ¶ 33 (finding that trial counsel was not ineffective in cross-examining the State's witnesses). Therefore, Mr. Likosar's fourth assignment of error is overruled.
 III. {¶ 27} Mr. Likosar's assignments of error are overruled. The conviction in the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
BAIRD, P.J. CONCURS and CARR, J. CONCURS IN JUDGMENT ONLY.