[Cite as *State v. Garcia*, 2022-Ohio-3426.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                    :

    Plaintiff-Appellee,      :

                             No. 107027

    v.                       :

JESUS GARCIA,                     :

    Defendant-Appellant.     :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 29, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-17-622561-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Holly M. Welsh and Tasha Forchione, Assistant Prosecuting Attorneys, *for appellee.*

Britt Newman and Eric Norton, *for appellant.*

ANITA LASTER MAYS, P.J.:

{¶ 1} Defendant-appellant Jesus Garcia ("Garcia") appeals his jury trial convictions for multiple counts arising from the sexual assault of his 13-year-old daughter Jane Doe ("Doe") on two occasions during the summer of 2017.

{¶ 2} We affirm.

## I. Background and Facts

{¶ 3} Garcia was indicted on October 27, 2017, on the following 10 counts:

Count 1: Rape, a first-degree felony, R.C. 2907.02(A)(2);

Count 2: Gross sexual imposition, a fourth-degree felony, R.C. 2907.05(A)(1);

Count 3: Kidnapping, a first-degree felony, R.C. 2905.01(A)(4);

Count 4: Illegal use of a minor in nudity-oriented material or performance, a second-degree felony, R.C. 2907.323(A)(1);

Count 5: Endangering children, a second-degree felony, R.C. 2919.22(B)(1);

Count 6: Rape, a first-degree felony, R.C. 2907.02(A)(2);

Count 7: Gross sexual imposition, a fourth-degree felony, R.C. 2907.05(A)(1);

Count 8: Kidnapping, a first-degree felony, R.C. 2905.01(A)(4);

Count 9: Illegal use of a minor in nudity-oriented material or performance, a second-degree felony, R.C. 2907.323(A)(1); and

Count 10: Endangering children, a second-degree felony, R.C. 2919.22(B)(1).

The indictments included two sexual motivation specifications pursuant to R.C. 2941.147(A) and six sexually violent predator specifications, pursuant to R.C. 2941.148(A).

{¶ 4} Doe was 14 years old at the time of the March 2018 trial. Doe testified that her maternal grandparents are her legal custodians and that she received home-school instruction from her grandmother. Doe's mother ("Mother") and her

biological father Garcia married shortly after Doe's birth, and the couple bore three additional siblings. Two siblings joined Doe at the grandparents' home while Mother and Garcia resided with the remaining sibling. Doe was pleased when in 2017, Doe, her siblings, and parents began to spend time together and do "regular family things." (Tr. 350.)

{¶ 5} On July 7, 2017, at about 10:00 a.m., Garcia picked Doe up from her grandparent's house to take her to breakfast. After the meal, Garcia took Doe to his residence with Mother who was at work at the time. The two were watching television when Garcia pulled Doe's shirt up and gave Doe a "mean look" when she told him "no" and tried to pull her shirt back down. (Tr. 352.)

{¶ 6} Doe said Garcia made her put on her mother's lingerie and "that's when he started touching me." (Tr. 353.) Doe stated Garcia touched Doe's breasts and "[he] stuck two fingers in me * * * [i]n my lower area." (Tr. 353.) Garcia used a silver camera to photograph Doe wearing the lingerie and warned her that he would post the pictures on the internet if she told anyone about the incident and that her mother and siblings would hate her. (Tr. 354.)

{¶ 7} The next incident occurred the morning of July 17, 2017. Garcia picked Doe up from her grandparents' home and took Doe and her eight-year-old brother C.G. to Garcia's automobile repair garage located several doors from Garcia's residence. Doe testified that she and Garcia went inside the garage and that Garcia locked the back and side doors to prevent C.G. from entering. Garcia

removed Doe's shirt, pulled down her pants and underwear and touched her breasts. He also took photographs and made Doe "touch him." (Tr. 356.)

{¶ 8} Afraid that Garcia would post the pictures, Doe did not tell anyone what happened. Several weeks later, after attending a church sermon that advised the truth "will set you free," Doe told her grandparents about the incidents. (Tr. 358.) They contacted the police and met with Detective Charles McNeely ("Det. McNeely") of the Cleveland Police Department ("CPD").

{¶ 9} Doe told Det. McNeely that Garcia placed the storage chip containing the photographs on top of a tall chest. At that point during the testimony, Doe became visibly distressed. After a brief recess, Doe identified photographs of Garcia's residence and the automotive garage. The defense had no questions.

{¶ 10} Mother testified that she began dating Garcia at the age of 14 and gave birth to Doe at 16. Doe has resided with her maternal grandparents most of her life and the grandparents became Doe's legal custodians when Doe was two years of age. Mother subsequently married Garcia and they had three sons.

{¶ 11} Mother confirmed that Garcia owned a car lot that contained a garage and an office. Mother also confirmed having a telephone conversation about the allegations in approximately October 2017 with the grandmother and then with Doe who seemed to be upset. Mother did not discuss the telephone conversations with Garcia and did not instruct her son C.G. not to speak with anyone about the case. Mother was at work when the police visited Mother's home a few days later. The defense had no questions for the witness.

{¶ 12} The grandmother testified that she allowed Doe to go to breakfast with Garcia after Garcia dropped Doe's brother off at summer school. "She was gone for several hours." (Tr. 313.) According to the grandmother, Garcia and Doe went to breakfast at about 10:00 a.m., then to Garcia's house, took food to Mother's job for lunch, picked the brothers up from summer school, and returned to the grandmother's house a little after 1:00 p.m.

{¶ 13} Several weeks later, Garcia and brother C.G. picked Doe up about 10:00 a.m. Doe was dropped off by Garcia, Mother, and C.G. at about 7:30 p.m. Exterior residential security cameras documented the arrivals and departures for both dates.

{¶ 14} Garcia contacted grandmother and invited Doe to breakfast a third time. Doe told her grandmother to tell Garcia that she had to stay home and do her homework. The grandmother said that Doe was very upset when they returned from a church service. It was then that Doe shared the abuse information with the grandparents that lead to police notification on October 6, 2017.

{¶ 15} Grandmother insisted that Doe had no reason to fabricate the allegations. "She lost her mother. She doesn't have a father. She is losing her brothers." (Tr. 342.) "She wanted [her family] in her life." *Id.* "She was happy because they were doing things as a family. Even the brothers are upset now because they can never do anything as a family together." *Id.* The grandmother was also upset that Mother was not supportive of her daughter and claimed that Garcia would "never cheat on me." *Id.*

{¶ 16} Grandmother contacted Mother on October 6, 2017, or October 7, 2017, to advise her of the allegations. Garcia was at home when Mother received the call. Garcia called the grandmother several days later because the grandmother called Mother at work several times to ask Mother to check for evidence of the photographs.

{¶ 17} Det. McNeely with the CPD sex crimes and child abuse unit was assigned Doe's case on October 7, 2017. Det. McNeely and a rape crisis victim's advocate interviewed Doe and her grandmother at their home on October 8, 2017. Search warrants were obtained for Garcia's home and the automotive garage and were executed on October 19, 2017. Multiple cameras including several silver cameras were discovered as well as storage device cards and flash drives. Det. McNeely confirmed during cross-examination that no corroborative evidence was discovered.

{¶ 18} Officer Robles of the CPD interviewed Doe and her grandmother. Doe "was embarrassed and quiet." Doe eventually did not want to discuss the matter further and the interview ended. (Tr. 280.) The defense had no questions for the witness.

{¶ 19} After the state rested, Garcia moved for judgment of acquittal of all charges pursuant to Crim.R 29. The trial court ruled that the motion was "unopposed and granted with regard to [the] Count 6" rape charge for the second incident and overruled for "Counts 1-5 and 7-10." Journal entry No. 102818155 (Mar. 6, 2018). The counts were renumbered accordingly.

{¶ 20} The defense presented two witnesses. David LaFraniere ("LaFraniere") had known Garcia for about 20 years and had also known the family roughly "16 or 17 years." (Tr. 407.)

Counsel: And have you ever had the occasion to spend time with [Doe] and the defendant?

Witness: Yes.

Counsel: And when would this have occurred?

Witness: June of last year. Approximately the first time that I met the girl.

Counsel: Oh, you think that's the first time you really met her?

Witness: Met her, yes.

(Tr. 408.)

{¶ 21} LaFraniere said the case allegations were ridiculous and that in June 2017, LaFraniere, Garcia, and Doe travelled to Homerville, Ohio, where LaFraniere was going to repair a friend's vehicle. Doe and Garcia appeared to get along well. After that trip, LaFraniere saw Doe, her siblings, and Garcia at the shop at least three or four times but never observed anything inappropriate. During cross-examination, LaFraniere admitted that he knew of Garcia's 2002 conviction for unlawful sexual conduct with a minor (Mother), 2015 conviction for carrying a concealed weapon and, over objections, denied familiarity with a group called the Latin Kings.

{¶ 22} Garcia testified in his defense. Garcia denied molesting Doe and admitted to the 2002 conviction that stemmed from his relationship with current

wife Mother. Garcia said the grandmother introduced then 27-year-old Garcia to then 14-year-old Mother and denied knowing that Mother was a registered runaway when they were introduced.

{¶ 23} Garcia stated that the only time he was alone with Doe without the other children was when Doe asked to accompany Garcia and LaFraniere to Homerville and grandmother agreed. Garcia disputed the accuracy of the home surveillance video evidence and testified he had time-stamped cell phone images dated June 30, 2017, of the outing to Homerville that depicted Doe having a good time. Garcia did not deny that Doe had been to his residence or to the garage during 2017. Garcia did admit to owning multiple cameras including silver Nikon and Olympus cameras.

{¶ 24} Garcia's renewed Crim.R. 29 motion for the remaining counts was overruled. The jury returned a verdict of not guilty to illegal use of a minor in nudity-oriented material or performance, R.C. 2907.323(A)(1) as charged in Count 4 of the indictment. Garcia was convicted of:

Rape, R.C. 2907.02 (A)(2), a first-degree felony with a sexually violent predator specification as charged in Count 1 of the indictment;

Gross sexual imposition, R.C. 2907.05(A)(1), a fourth-degree felony with a sexually violent predator specification as charged in Count(s) 2, 6 (formerly count 7) of the indictment;

Kidnapping, R.C. 2905.01(A)(4), a first-degree felony with a sexual motivation specification, and a sexually violent predator specification as charged in Counts 3, 7 (formerly Count 8) of the indictment;

Endangering children, R.C. 2919.22 (B)(1), a first-degree misdemeanor as amended in Count(s) 5, 9 (formerly Count 10) of the

indictment (minus the furthermore clause(s) dismissed by the state); and

Illegal use of a minor in nudity-oriented material or performance, R.C. 2907.323(A)(1), a second-degree felony as charged in Count(s) 8 (formerly Count 9) of the indictment.

Journal entry No. 102952867 (Mar. 8, 2018).

{¶ 25} Garcia was sentenced to life with parole eligibility after twenty years and adjudged to be a Tier I, II, and III registered sex offender. The instant appeal followed.

## II. Missing Evidence

{¶ 26} Oral argument was conducted before this court on January 15, 2019. In *State v. Garcia*, 8th Dist. Cuyahoga No. 107027, 2019-Ohio-4885, this court reversed the convictions and remanded for a new trial based on missing evidence that the state failed to provide in response to this court's order. Upon reconsideration in *State v. Garcia*, 8th Dist. Cuyahoga No. 107027, 2020-Ohio-3026, we vacated our prior opinion, reversed the judgment, and remanded the case to the trial court to determine whether Garcia or the state was responsible for the inability to produce a complete record under App.R. 9 in light of the missing exhibits. *Id.* at ¶ 40, citing *State v. Tiedjen*, 8th Dist. Cuyahoga No. 106794, 2019-Ohio-2430, *State v. Jones*, 71 Ohio St.3d 293, 1994-Ohio-162, 643 N.E.2d 547, and *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 400 N.E.2d 384 (1980).

{¶ 27} On remand, Garcia was represented by appointed counsel. After several pretrials and ongoing discovery, on August 13, 2021, the state filed a notice of joint stipulation to correction of the record. On August 19, 2021, the trial court

issued an entry to return the matter to the appellate court for disposition on the merits following correction of the record. The case was ultimately returned to the appellate docket.

## III. Assignments of Error

{¶ 28} Garcia assigns five errors for analysis:

I.    The evidence was insufficient to support appellant's convictions for rape, kidnapping, gross sexual imposition and illegal use of a minor in nudity-oriented material or performance, and the verdicts are against the manifest weight of the evidence.

II.   Appellant was denied effective assistance of counsel due to the cumulative effect of defense counsel's errors during the pretrial phase, the trials on the underlying charges and sexually violent predator specifications, and the sentencing hearing.

III.  The trial court erred in sentencing appellant to consecutive prison terms because the statutory requirements for imposing consecutive sentences were not present in the record.

IV.   The trial court erred in ordering appellant to pay the maximum $20,000 fine without determining his ability to pay and because the record demonstrates that appellant is indigent.

V.    The trial court erred in ordering appellant to pay the costs of prosecution in its sentencing order due to the court's failure to advise him that he is liable for court costs at the sentencing hearing.

## IV. Sufficiency and Manifest Weight

{¶ 29} Garcia moved for a Crim.R. 29 dismissal at the close of the state's case that was unopposed and granted as to the Count 6 rape charge. A renewed motion was made as to all counts prior to presentation to the jury. Garcia argues here that the evidence is insufficient to support his convictions and that the convictions are against the manifest weight of the evidence.

## A. Standards of Review

{¶ 30} Pursuant to Crim.R. 29(A), a court

> "shall order the entry of the judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses."  Because a Crim.R. 29 motion questions the sufficiency of the evidence, "[w]e apply the same standard of review to Crim.R. 29 motions as we use in reviewing the sufficiency of the evidence."

*Fairview Park v. Peah*, 8th Dist. Cuyahoga No. 110128, 2021-Ohio-2685, ¶ 37, quoting *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.

{¶ 31} The question of whether the evidence is sufficient as a matter of law to support a conviction involves a determination of whether the state has met its burden of production at trial.  *State v. Hunter*, 8th Dist. Cuyahoga No. 86048, 2006-Ohio-20, ¶ 41, citing *State v. Thompkins*, 78 Ohio St.3d 380, 390, 678 N.E.2d 541 (1997).  We do not weigh the evidence but determine "'whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'" *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶ 32} "When evaluating the sufficiency of the evidence to prove the elements, it must be remembered that circumstantial evidence has the same probative value as direct evidence."  *State v. Palmer*, 7th Dist. Mahoning No. 19 MA 0108, 2021-Ohio-4639, ¶ 45, citing *Jenks* at 272-273.

{¶ 33} "A manifest weight challenge attacks the credibility of the evidence presented and questions whether the state met its burden of persuasion at trial." *State v. Whitsett*, 8th Dist. Cuyahoga No. 101182, 2014-Ohio-4933, ¶ 26, citing *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541; *State v. Bowden*, 8th Dist. Cuyahoga No. 92266, 2009-Ohio-3598, ¶ 13.

{¶ 34} We sit "as a 'thirteenth juror.'" *Thompkins* at 387, quoting *Tibbs v. Florida*, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982).

> In conducting this review, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and determine whether the jury "'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

*Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, at ¶ 81.

{¶ 35} Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the trier of fact. An appellate court may not substitute its view for that of the jury unless it finds that the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25; *Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997); *State v. Walker*, 8th Dist. Cuyahoga No. 109328, 2021-Ohio-2037. The trier of fact is best able "'to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing

the credibility of the proffered testimony.'" *State v. Scott*, 8th Dist. Cuyahoga Nos. 106451 and 106474, 2018-Ohio-3791, ¶ 20, quoting *Wilson* at ¶ 24.

**B. Discussion**

{¶ 36} Specifically, Garcia challenges the convictions for rape, kidnapping, gross sexual imposition, and use of a minor in a nude performance. The analysis is based on the versions of the relevant statutes in effect at the time.

**1. Rape R.C. 2907.02(A)(2)**

{¶ 37} The indictment charged that Garcia "did engage in sexual conduct, to wit: Digital penetration, with Jane Doe, dob 2/21/2004 by purposely compelling her to submit by force or threat of force." The subject body part was not specified in the indictment. R.C. 2907.02(A)(2) provided that "[n]o person shall engage in sexual conduct with another when the offender purposely compels the other person to submit by force or threat of force."

{¶ 38} R.C. 2907.01(A) defined sexual conduct to include in pertinent part:

> the insertion, however slight, of any part of the body or any instrument, apparatus, or other object into the vaginal or anal opening of another. Penetration, however slight, is sufficient to complete vaginal or anal intercourse.

{¶ 39} The trial court charged the jury that to find Garcia guilty, it must find that "the defendant did engage in sexual conduct, to wit: digital penetration" with the victim "by purposely compelling her to submit by force or threat of force." (Tr. 474.) The trial court also instructed the jury on the definition of sexual conduct.

{¶ 40} Vaginal or anal penetration, however slight, must be established to support a rape conviction. *In re J.S.*, 8th Dist. Cuyahoga No. 102800, 2015-Ohio-

4990, ¶ 19, citing *Fulkerson*, 8th Dist. Cuyahoga No. 83566, 2004-Ohio-3114, ¶ 21; *State v. Falkenstein*, 8th Dist. Cuyahoga No. 83316, 2004-Ohio-2561, ¶ 16; *State v. Blankenship*, 8th Dist. Cuyahoga No. 77900, 2001 Ohio App. LEXIS 5520, 12 (Dec. 13, 2001).

{¶ 41} Garcia argues that the testimony was insufficient to establish the elements of the charge.

Counsel:   Did anything happen after [Garcia] pulled your shirt up?

Doe:       He was messing with my breasts, and he had stuck two fingers in me.  * * *

Counsel:   Then you said he put his fingers in you.  What part of your body did he put his fingers in?

Doe:       My lower area.

Counsel:   Okay.  Were your pants on or off when that happened?

Doe:       Off.

Counsel:   And was your underwear on or off when that happened.

Doe:       Off.

(Tr. 353.)  Garcia "made me put on" Mother's "lingerie and that is when he started touching me." *Id.*

{¶ 42} The state counters that the testimony is sufficient and cites several cases in support of its position that convictions have been obtained where minors have testified using terminology such as private parts. *See State v. Parsons*, 2d Dist. Montgomery No. 20476, 2005-Ohio-2017, *In re Fisher*, 10th Dist. Franklin

Nos. 97APF10-1356 and 97APF11-1552, 1998 Ohio App. LEXIS 2846 (June 25, 1998), and *State v. Denkins*, 1st Dist. Hamilton No. C-030518, 2004-Ohio-1696.

{¶ 43} Garcia asserts the evidence is insufficient based on this court's finding in *In re D.C.,* 2018-Ohio-163, 104 N.E.3d 121 (8th Dist.). We find that *In re D.C.* is distinguishable. There we held, "'If the evidence shows that the defendant made contact only with the victim's buttocks, there is not sufficient evidence to prove the defendant guilty of the crime of anal rape.'" *Id.* at ¶ 6, quoting *State v. Wells*, 91 Ohio St.3d 32, 2001-Ohio-3, 740 N.E.2d 1097.

{¶ 44} The victim in *In re D.C.* was eight years old at the time of the incident and twelve at the time of trial. The defendant was also a minor. The victim testified that the defendant "drove" the victim's hand "to my rear." After the court twice inquired "into your rear?" the victim repeated "into my bottom." *Id.* at ¶ 5. This court held that the evidence was insufficient to demonstrate that penetration of the anal opening occurred. *Id.* at ¶ 9.

{¶ 45} In contrast, Doe testified that Garcia "stuck two fingers in me" "in my lower area." (Tr. 353.) The trial court instructed the jury on the definition of sexual conduct. She stated her underwear was off at the time. *Id.* "In" is defined as "within" and "inside of." *Webster's Dictionary* (1999). There are two lower body cavities, the anus and vagina. *See, e.g.*, R.C. 2933.21(A)(1), "'[b]ody cavity search' means an inspection of the anal or vaginal cavity of a person."

{¶ 46} The record reflects that Doe was distraught during her testimony and the trial court took a short recess. It is also significant that Doe was testifying against

her father who sat directly before her.  Although Doe was 14 years of age at the time of her testimony, she was not too young to understand the common and ordinary meaning of the words employed to describe penetration of her lower body cavity. *See State v. Hill*, 2016-Ohio-353, 60 N.E.3d 434, ¶ 28 (5th Dist.)  ("The victim was a twenty-year-old female at the time of trial who clearly understands the meaning of 'vaginal intercourse' as involving penetration.").

{¶ 47} Viewing the evidence in a light most favorable to the prosecution, we find that a rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.  In addition, after reviewing the entire record and all reasonable inferences, we do not find that the jury clearly lost its way. *Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), citing *Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717.

{¶ 48} Based upon the foregoing and the entire record in this matter, we find Garcia's conviction is not against the sufficiency or the manifest weight of the evidence.

### 2. Kidnapping

{¶ 49} Garcia also challenges the two kidnapping counts under R.C. 2905.01(A)(4) because there is no evidence of physical restraint in this case. Garcia ignores that restraint is not so narrowly defined.

{¶ 50} The statute provides:

(A) No person, by *force, threat, or deception*, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall

remove another from the place where the other person is found *or restrain* the liberty of the other person, for any of the following purposes:

\* \* \*

(4) To engage in sexual activity, as defined in section 2907.01 of the Revised Code, with the victim against the victim's will.

(Emphasis added.) *Id.*

{¶ 51} The jury in this case was instructed that "to restrain one of her liberty means to limit or restrain" Doe's "freedom of movement, and that restraint need not be for any specific duration of time, nor in any specific manner." (Tr. 481.)

> A person's liberty is restrained when the offender limits the victim's freedom of movement in any fashion for any period of time. *State v. Totarella*, 11th Dist. No. 2009-L-064, 2010-Ohio-1159, ¶118; see also *State v. Woodson*, 8th Dist. No. 95852, 2011-Ohio-2796, ¶13. Consequently, the element of restraint does not depend on "the manner a victim is restrained. Rather, it depends on whether the \* \* \* restraint is such as to place the victim in the offender's power and beyond immediate help, even though temporarily. \* \* \* [Thus], the restraint involved need not be actual confinement, but may be merely compelling the victim to stay where [she] is." Committee Comments to R.C. 2905.01. See also *State v. Walker*, 9th Dist. Medina No. 2750-M, 1998 Ohio App. LEXIS 4067, \*5 (Sep. 2, 1998).

*State v. Butcher*, 11th Dist. Portage No. 2011-P-0012, 2012-Ohio-868, ¶ 71.

{¶ 52} Doe testified that, during the incident at Garcia's home, Garcia gave her a "mean look" when she told him "no" and told her that she "had to." (Tr. 352-353.) During both incidents, Garcia told Doe that he would post the photographs on the internet and her family would hate her if she told anyone what happened. During the second incident, Garcia also locked the door to the garage.

{¶ 53} "Force is an essential element of rape pursuant to R.C. 2907.02(A)(2), * * * gross sexual imposition pursuant to R.C. 2907.05(A)(1)" and "[i]n certain instances" "kidnapping under R.C. 2905.01(A)." *State v. Clark*, 8th Dist. Cuyahoga No. 101863, 2015-Ohio-3027, ¶ 27. R.C. 2901.01(A) defines "force" as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing."

{¶ 54} A minor may be restrained where there is "evidence of subtle and/or psychological force" by an individual "who is an authority figure" "even in the absence of any express thread of harm of significant physical restraint." *Id.* at ¶ 30, citing *State v. Milam*, 8th Dist. Cuyahoga No. 86268, 2006-Ohio-4742, ¶ 12 (involving a 13-year-old), and *State v. Szorady*, 8th Dist. Cuyahoga No. 95045, 2011-Ohio-1800, ¶ 34 (also involving 13-year-old victims). In cases that involve the "'filial obligation of obedience to a parent,' a lesser showing of force may be sufficient." *State v. Garner*, 8th Dist. Cuyahoga No. 89840, 2008-Ohio-1949, ¶ 18, quoting *State v. Eskridge*, 38 Ohio St.3d 56, 58, 526 N.E.2d 304 (1988).

{¶ 55} Doe said, "I was scared that he was going to post the pictures on the internet and that my brothers and my mom would hate me." (Tr. 357.) We find that the evidence is sufficient to demonstrate the presence of constraint and the verdict on this count is not against the manifest weight of the evidence.

### 3. Gross sexual imposition

{¶ 56} Here Garcia asserts that Doe's statements that Garcia "messed with" her breasts was insufficient to support the convictions for gross sexual imposition.

R.C. 2907.05(A)(1) prohibits "hav[ing] sexual contact with another * * * by purposely compel[ling] the other person * * * to submit by force or threat of force."

{¶ 57} Our findings in *Clark* and *Garner* are also determinative here. Doe testified that that she was afraid and felt compelled by Garcia's threats to publish the photographs and turn her family against her. We find that the evidence is sufficient to demonstrate the presence of force and constraint and that the verdict on this count is not against the manifest weight of the evidence.

### 4. Illegal use of a minor in nudity-oriented material or performance

{¶ 58} Counts 4 and 9 of the indictment charged that Garcia "did recklessly create, direct, produce, or transfer material or performance that shows a minor in a state of nudity in violation of R.C 2907.323(A)(1)." The jury found Garcia not guilty of Count 4 which leaves the incident at the garage.

{¶ 59} The then current version of the statute provided:

(A) No person shall do any of the following:

(1) Photograph any minor *who is not the person's child or ward* in a state of nudity, or create, direct, produce, or transfer any material or performance that shows the minor in a state of nudity, *unless both of the following apply*:

> (a) The material or performance is, or is to be, sold, disseminated, displayed, possessed, controlled, brought or caused to be brought into this state, or presented for a bona fide artistic, medical, scientific, educational, religious, governmental, judicial, or other proper purpose, by or to a physician, psychologist, sociologist, scientist, teacher, person pursuing bona fide studies or research, librarian, member of the clergy, prosecutor, judge, or other person having a proper interest in the material or performance;

(b) The minor's parents, guardian, or custodian consents in writing to the photographing of the minor, to the use of the minor in the material or performance, or to the transfer of the material and to the specific manner in which the material or performance is to be used.

(Emphasis added.) R.C. 2907.323(A)(1)(a)-(b).

{¶ 60} Garcia argues that the statute applies only where the victim is not the defendant's child and cites R.C. 2901.04(A) for the premise that "sections of the Revised Code defining offenses or penalties shall be strictly construed against the state, and liberally construed in favor of the accused." The state counters that the policy is to prevent exploitation and not to allow a parent or guardian to circumvent the law. We agree with the state.

{¶ 61} R.C. 1.47 provides:

In enacting a statute, it is presumed that:

(A) Compliance with the constitutions of the state and of the United States is intended;

(B) The entire statute is intended to be effective;

(C) A just and reasonable result is intended;

(D) A result feasible of execution is intended.

{¶ 62} Pornography and obscenity that involved children are not entitled to First Amendment protection. *State v. Tooley*, 114 Ohio St.3d 366, 2007-Ohio-3698, 872 N.E.2d 894, ¶ 8. The government has a "compelling and substantial interest in safeguarding the physical and psychological well-being of its children and in

preventing their sexual exploitation." *Id*. at ¶ 10, citing *New York v. Ferber*, 458 U.S. 747, 756-767, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982).

{¶ 63} The Ohio Supreme Court, while considering the definition of nudity under R.C. 2907.323(A)(1), recited a nonexhaustive list of constitutionally "legitimate state objectives that are served by decreasing or eradicating child pornography." *State v. Martin*, 149 Ohio St.3d 292, 2016-Ohio-7196, 75 N.E.3d 109, ¶ 13. Those objectives include:

> protecting the "physiological, emotional and mental health" of children, [*New York v.*]*Ferber*, 458 U.S. [747], 758, 102 S.Ct. 3348, 73 L.Ed.2d 1113 [1982]; preventing exploitation of children, because the distribution of child pornography is "intrinsically related to the sexual abuse of children," *Id*. at 759; preventing a permanent record of an abused or exploited child, *Id*.; and lessening the economic incentives for those who would produce child pornography, [*State v.*]*Meadows*, 28 Ohio St.3d [43], 49, 503 N.E.2d 697 [1986].

*Id*.

{¶ 64} "All [of] the state interests that apply to eliminating child pornography apply to eliminating child-nudity-oriented material." *Id*. at ¶ 12. "[C]hild-nudity-oriented material leaves a permanent record that can haunt a child into adulthood and provides an economic incentive to its purveyors and possessors." *Id*.

{¶ 65} R.C. 2907.01 that sets forth the definitions for sex offenses under R.C. Chapter 2907 does not define the terms child, ward, parent, and guardian. Garcia is the natural father, but the grandparents are Doe's legal guardians of Doe. R.C. Chapter 2111 governs guardians and conservatorships in the juvenile and

probate courts. R.C. 2111.01(A) defines a guardian as "a person" who is appointed by the probate court and charged with the "care and management of the * * * minor." The guardian has "custody" of the minor and is to provide for "maintenance" and "education" of the minor. R.C. 2111.06. The duties of a guardian include to "protect and control the person of the ward." R.C. 2111.13.

{¶ 66} Garcia, Doe, Mother, and the grandmother testified that the grandparents have been the legal guardians from the age of two. This court finds that the parental consent exception is in recognition of the duty of a parent or legal custodian to protect the child.

{¶ 67} The grandparents were charged with Doe's protection, and they did not give consent pursuant to R.C. 2907.323(A)(1)(b). The video was not created "for a proper purpose" pursuant to R.C. 2907.323(A)(1)(a) and the statute requires compliance with both elements.

{¶ 68} Garcia also argues that the conviction should be reversed because the search warrant recovered multiple cameras and storage chips, but no chips were located that contained photographs of Doe. Doe testified that Garcia took the photographs with a silver camera. Garcia admitted that he owned and used the silver Nikon camera discovered during the search. Garcia also said that he ultimately met with the grandmother because her repeated calls to Mother requesting that Mother try to find evidence of the photographs in the home were causing stress to Mother.

{¶ 69} The jury was in the best position to observe the witnesses and determine their credibility. Circumstantial evidence has the same probative value as direct evidence when evaluating sufficiency. *Palmer*, 7th Dist. Mahoning No. 19 MA 0108, 2021-Ohio-4639, ¶ 45, citing *Jenks*, 61 Ohio St.3d 259, 272-273, 574 N.E.2d 492 (1991), *Jenks* at 272-273. "We cannot say that the jury clearly lost its way or created such a manifest miscarriage of justice that appellant's convictions should be reversed." *Id.*

{¶ 70} Viewed in a light most favorable to the prosecution, we find that the evidence was sufficient as a matter of law and that the verdict is supported by the manifest weight of the evidence.

{¶ 71} The first assignment of error lacks merit.

## V. Ineffective assistance of counsel

{¶ 72} Garcia argues as his second assigned error that defense counsel was ineffective due to singular errors as well as the cumulative effects of those errors. We disagree.

{¶ 73} Garcia cites the following conduct: (1) failure to cross-examine Doe; (2) failure to object to inadmissible hearsay by an incompetent child witness; (3) failure to object or seek exclusion of Garcia's prior relationship with a 14-year-old; (4) opening the door to the admission of otherwise inadmissible prior convictions; (5) failure to advocate for Garcia on summation; (6) failure to ask for a lesser-included instruction for the kidnapping charges; and (7) failure to adequately defend Garcia during the sexually violent predator adjudication.

{¶ 74} To substantiate a claim of ineffective assistance of counsel, Garcia must show that counsel's performance was so deficient that he was prejudiced and denied a fair trial. *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Garcia must also show that there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. *State v. Dues*, 2014-Ohio-5276, 24 N.E.3d 751, ¶ 55 (8th Dist.), citing *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 75} "Judicial scrutiny of counsel's performance must be highly deferential." *Strickland* at 671. "A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight" as well as "to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689.

{¶ 76} In Ohio, there is a presumption that a properly licensed attorney is competent. *State v. Calhoun*, 86 Ohio St.3d 279, 714 N.E.2d 905 (1999). Garcia must overcome the presumption that, under the circumstances, the challenged action "'might be considered sound trial strategy.'" *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955). We also consider whether the actions by counsel were "outside the wide range" of behaviors demonstrating "professionally competent assistance." *Strickland* at 690.

{¶ 77} Garcia points to counsel's failure to pose a hearsay objection during direct examination of the grandmother:

State: Did you ever have any conversations with any of the other children * * * as a result of your conversation with Doe?

Grandmother: [Doe's 8-year-old brother] C.G.

State: When did you have that conversation with C.G.?

Grandmother: It was October 3rd. I had picked him up from school, and I asked him about an incident that Doe had told me that I heard about, and he told me, yes, it happened.

Counsel: Objection.

Court: You cannot say what he said.

Witness: O.K.

(Tr. 320.)

{¶ 78} Counsel again objected to the next exchange when grandmother responded that C.G. "remembered it" when asked about C.G.'s demeanor at the time. The objection was overruled. Counsel objected to the state's question about C.G.'s attitude at the time. The objection was overruled.

{¶ 79} Doe and grandmother testified about the events surrounding the two incidents. A defense counsel's determinations regarding making objections to testimony and cross-examining witnesses are tactical decisions that are within the discretion of trial counsel. *State v. Frierson*, 2018-Ohio-391, 105 N.E.3d 583, ¶ 25 (8th Dist.), citing *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 140. "'[T]he failure to make objections is not alone enough to sustain a claim of ineffective assistance of counsel.'" *Id.*, quoting *State v. Conway*, 109 Ohio St. 3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 103.

{¶ 80} We also do not find that counsel's decision to forego cross-examination of Doe constitutes ineffective assistance. Fourteen-year-old Doe was understandably a reluctant and emotional witness. Coupled with the sensitive dynamics of the familial relationship and Doe's obvious distress as reflected in the record, counsel may well have determined that it was in Garcia's best interest to refrain. "Generally, a trial counsel's decision to cross-examine a witness and the extent of that cross-examination are tactical matters." *State v. Martin*, 9th Dist. Lorain No. 15CA010888, 2017-Ohio-2794, ¶ 9, citing *State v. Likosar*, 9th Dist. Medina No. 03CA0063-M, 2004-Ohio-114, ¶ 26, citing *State v. Flors*, 38 Ohio App.3d 133, 139, 528 N.E.2d 950 (8th Dist.1987).

{¶ 81} In addition, this court does not find that the allowance of character evidence under Evid.R. 404 and impeachment by prior convictions under Evid.R. 609 rendered counsel ineffective. Garcia argues that the evidence was prejudicial because it revealed his prior conviction arising from his relationship with Mother who was Doe's age of 14 years at the time. Defense counsel confirmed that he opened the door to character and that he had warned his client about the possibility of disclosure.

{¶ 82} Counsel objected to the admission of one of Garcia's prior convictions that was sustained by the trial court. Counsel also requested that the trial court bar any references by the state to the Latin Kings that stemmed from police report notes that written references to the alleged gang were observed during the search warrant execution.

{¶ 83} Garcia, Mother, and the grandmother testified that Mother met Garcia when she was 14 years of age, gave birth to Doe at the age of 16, married Garcia, and had three additional children. Based on the record, Garcia has not overcome the presumption that, under the circumstances, the challenged action "'might be considered sound trial strategy.'" *Strickland* 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955).

{¶ 84} Garcia's claim that counsel was ineffective for failing to request a lesser included offense instruction also fails.

> "[A]n instruction is not warranted every time any evidence is presented on a lesser included offense. There must be 'sufficient evidence' to 'allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included (or inferior-degree) offense.' (Emphasis sic.) *State v. Shane*, 63 Ohio St.3d [630,] 632-633, 590 N.E.2d 272." *State v. Conway*, 108 Ohio St.3d 214, 2006-Ohio-791, 842 N.E.2d 996.

*State v. Hines*, 8th Dist. Cuyahoga No. 90125, 2008-Ohio-4236, ¶ 39.

{¶ 85} We have already determined that the kidnapping convictions are sufficient as a matter of law and are not against the manifest weight of the evidence. "[C]ounsel is not required to file futile motions." *State v. Hudson*, 8th Dist. Cuyahoga No. 102767, 2015-Ohio-5424, ¶ 9, citing *State v. Martin*, 20 Ohio App.3d 172, 174, 485 N.E.2d 717 (1st Dist.1983); *State v. Parra*, 8th Dist. Cuyahoga No. 95619, 2011-Ohio-3977, ¶ 78.

{¶ 86} Finally, Garcia offers that defense counsel's failure to address the R.C. 2971.01(H)(2) facts during the sexually violent predator specification portion of the trial was also deficient.

{¶ 87} "Under R.C. 2971.01(H), a 'sexually violent predator' means a person who 'commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses.'" *State v. Sylvester*, 8th Dist. Cuyahoga No. 103841, 2016-Ohio-5710, ¶ 11. "The offenses of rape under R.C. 2907.02 and gross sexual imposition under R.C. 2907.05(A)(4) are considered 'violent sex offenses.' *See* R.C. 2971.01(L)(1)." *Id.* R.C. 2971.01(H)(2) contains a "non-exclusive list of factors" that provide guidance to the trial court on whether an offender "may" be "likely to engage in the future in one or more sexually violence offenses." *Id.* at ¶ 12.

{¶ 88} The state argued that Garcia's prior conviction, the family dynamics, and the fact that the assault involved his own daughter indicated that he would inflict future assaults against other victims. *See* R.C. 2971.01(H)(2)(f). Defense counsel responded:

> I will only say this. Proof beyond a reasonable doubt is still the standard that we are under here. Proof beyond a reasonable doubt is hard enough when you're trying to look in the past and see if it is established.
>
> I am only suggesting that what you are being asked to do is completely conjectural about what is going to happen in the future, and you're being asked to somehow find that beyond a reasonable doubt.
>
> I am suggesting that you ought not.

(Tr. 544-545.)

{¶ 89} This court does not find that counsel's actions were "outside the wide range" of behaviors demonstrating "professionally competent assistance." *Strickland* at 690.

{¶ 90} Garcia also argues that counsel failed to advocate during closing arguments.

> Counsel abandoned his role as Garcia's advocate when he told the jury that their verdicts on "[the counts in the indictment] could be all the same. It could be half. It could be none, You will decide, and those verdicts may not necessarily be consistent. One count may be strong. The other count may not be."

 Appellant's brief at p. 28-29, quoting tr. 509-510.

{¶ 91} "Counsel's decision on whether to give an opening statement or closing argument and how to formulate and deliver them are tactical decisions." *State v. Fouts*, 4th Dist. Washington No. 15CA25, 2016-Ohio-1104, ¶ 69, citing *State v. Bradley*, 42 Ohio St. 3d 136, 144, 538 N.E.2d 373 (1989) (rejecting defendant's ineffective assistance of counsel claim that his counsel's closing argument was "too brief, passionless and themeless").

{¶ 92} The record reflects that counsel rendered an impassioned argument in a difficult case. Counsel reminded the jury of the state's burden of proof and the lack of corroborative physical evidence. Counsel also championed Garcia's directness. "[Garcia] chose to talk to you" and to "have Mr. LaFraniere talk to you." (Tr. 511.) Garcia has not demonstrated prejudice or overcome the presumption of counsel's competence.

{¶ 93} Finally, Garcia claims prejudice under the doctrine of cumulative error:

> Under this doctrine, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial-court error does not individually constitute cause for reversal. *State v. DeMarco*, 31 Ohio St.3d 191, 196-197. *See also State v Hunter*, 131 Ohio St. 3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶ 132. Moreover, "errors cannot become prejudicial by sheer weight of numbers." *State v. Hill*, 75 Ohio St.3d at 212, 661 N.E.2d 1068.

*State v. Singleton*, 8th Dist. Cuyahoga No. 98301, 2013-Ohio-1440. *Id*. at ¶ 64. The argument fails in the face of our finding that no errors were committed. *Id*. at ¶ 66.

{¶ 94} Garcia has not demonstrated that "there was a substantial violation of any of defense counsel's essential duties" and "that he was materially prejudiced by counsel's ineffectiveness." *Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 139, citing *State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831 (1988).

{¶ 95} The second assigned error is overruled.

## VI. Consecutive sentences

{¶ 96} Under the third assignment of error, Garcia argues the elements supporting the imposition of consecutive sentences are lacking in the record.

{¶ 97} The trial court may impose consecutive sentences on the defendant if the trial court determines that consecutive sentences (1) are necessary to protect the public from future crime or to punish the offender; and (2) are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to

the public. R.C. 2929.14(C)(4). Finally, the court must find that at least one of the following applies:

> (a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.

> (b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

> (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

{¶ 98} The trial court stated that the new Count 7 kidnapping conviction was to be served consecutive to the Count 1 rape conviction "citing the authority of R.C. 2971.04(E) as well as R.C. 2929.14(C), specifically that consecutive sentences are necessary to protect the public from future crime." (Tr. 566-567.) The trial court explained:

> You've done this before. You did it again. This is two generations of people that have been abused. Consecutive sentences are not disproportionate to the seriousness of your conduct, and consecutive sentences are not disproportionate to the danger you pose to the public, and the history of criminal conduct demonstrates consecutive sentences are necessary to protect the public from future crime by you.

(Tr. 567.)

{¶ 99} The sentencing entry provides:

The court imposes prison terms consecutively finding that consecutive service is necessary to protect the public from future crime or to punish defendant; that the consecutive sentences are not disproportionate to the seriousness of defendant's conduct and to the danger defendant poses to the public; and that, at least two of the multiple offenses were committed in this case as part of one or more courses of conduct, and the harm caused by said multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of defendant's conduct.

Journal entry No. 102952867, p. 2 (Mar. 15, 2018).

{¶ 100} The third assigned error is overruled.

## VII. Imposition of fine

{¶ 101} In the fourth assigned error, Garcia charges that the trial court failed to determine his ability to pay when it imposed the maximum fine of $20,000. The fine was imposed for the Count 1 rape, a first-degree felony. A trial court may impose a maximum fine for a first-degree felony pursuant to R.C. 2929.18(A)(3)(a). *State v. Franklin*, 8th Dist. Cuyahoga No. 99806, 2014-Ohio-1422, ¶ 28.

[I]n order to avoid an imposition of the mandatory fine, the defendant must (1) submit an affidavit of indigency to the court prior to sentencing, and (2) the court must find that "the offender is an indigent person and is unable to pay the mandatory fine." *State v. Gipson*, 80 Ohio St.3d 626, 634, 1998 Ohio 659, 687 N.E.2d 750 (1998).

*Id.* at ¶ 30.

{¶ 102} The trial court found that Garcia was indigent for purposes of legal representation at the inception of the case and for appointing appellate counsel and subsequently observed that Garcia managed to post the $150,000 bond. However, "'a determination that a criminal defendant is indigent for the purpose of receiving counsel does not prohibit the trial court from imposing a fine.'" *Id.* at ¶ 32, quoting

*State v. Mock*, 187 Ohio App.3d 599, 2010-Ohio-2747, 933 N.E.2d 270, ¶ 62 (7th Dist.).

{¶ 103} Secondly, Garcia did not file an affidavit with the trial court prior to sentencing nor did he raise the issue at the hearing. "Without such filing, the trial court did not err when it imposed the mandatory fine pursuant to R.C. 2929.18(B)(1)." *Id*. at ¶ 31.

{¶ 104} The fourth assigned error lacks merit.

## VIII.  Order to pay costs

{¶ 105} Garcia's fifth and final assigned error complains that the trial court failed to mention court costs on the record though court costs are imposed in the judgment entry. "A convicted criminal defendant is responsible for the costs of prosecution.  R.C. 2947.23(A)(1)(a)." *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 263.

{¶ 106} It is true that a journal entry is to reflect what occurred in court. However, a remand to address this issue is not required.  R.C. 2947.23(C) provides that the trial court "'retains jurisdiction to waive, suspend, or modify the payment of the costs of prosecution * * * at the time of sentencing *or at any time thereafter*.'" (Emphasis sic.)  *State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 265, quoting R.C. 2947.23(c).  Therefore, Garcia "does not need this court" to reverse the conviction or "remand this case in order for him to file a motion to waive costs." *Id*.

{¶ 107} The fifth assigned error also lacks merit.

## IX. Conclusion

{¶ 108} The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, PRESIDING JUDGE

MARY EILEEN KILBANE, J., and
KATHLEEN ANN KEOUGH, J., CONCUR